James E. Berger (JB 6605)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
E-mail: jamesberger@paulhastings.com

Christopher F. Dugan (*Pro hac vice* to be submitted)
Joseph R. Profaizer (*Pro hac vice* to be submitted)
Adam J. van Alstyne (*Pro hac vice* to be submitted)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705



*Attorneys for Defendant Fondo Financiero*
*para el Desarrollo de la Cuence del Plata (FONPLATA)*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JUDGE BUCHWALD

OSCAR DAVID CORTEZ UZEDA,

                              Plaintiff,

        - against -

FONDO FINANCIERO PARA EL
DESARROLLO DE LA CUENCA DEL PLATA
A/K/A FONPLATA,
                    Defendant.

**'07 CIV 7965**

Civil Action No.

---

## NOTICE OF REMOVAL

    Pursuant to 28 U.S.C. §§ 1441 to 1446, Fondo Financiero para el Desarrollo de la

Cuenca del Plata ("FONPLATA") hereby removes this entire action from the Supreme Court of

the State of New York, County of New York (the "State Court"), to the United States District

Court for the Southern District of New York.[1] This removal is proper pursuant to 28 U.S.C. § 1441(d) because this Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1330(a)[2] and 28 U.S.C. § 1331. In accordance with 28 U.S.C. § 1446(a), FONPLATA provides the following "short and plain statement" of the grounds for removal:

1.    FONPLATA is an international legal person of unlimited duration owned by five sovereign Republics (Argentina and Brazil, which each own 33% of FONPLATA, and Bolivia, Paraguay and Uruguay, which each own 11% of FONPLATA). FONPLATA was created by the Articles of Agreement that entered into force on the 14th of October 1976, and in accordance with the "Treaty of the Plata Basin" that entered into force on the 14th of August of 1970 among the sovereign Republics of Argentina, Bolivia, Brazil, Paraguay and Uruguay. *See* Declaration of Joseph R. Profaizer ¶¶ 2-3 (Exhibits 1-2).[3] FONPLATA is governed in accordance with the Treaty of the Plata Basin and other international agreements subsequently executed among those five sovereign Republics. *See* Declaration of Joseph R. Profaizer ¶¶ 2-4 (Exhibits 1-3). As set forth in the Treaty of the Plata Basin, FONPLATA's Articles of Agreement, and other applicable

---

[1] This action was captioned as above in the State Court and bore index number 07/110974.

[2] Section 1330(a) provides for jurisdiction pursuant Foreign Sovereign Immunities Act, Pub. L. No. 94-583, 90 Stat. 2891, *codified at* 28 U.S.C. §§ 1330, 1332(a)(2)-(a)(4), 1391(f), 1441(d), 1602-1611, and "any applicable international agreement."

[3] Due to the expedited nature of the State Court action, at this time, FONPLATA is only able to provide preliminary unofficial translations of the Treaty of the Plata Basin, the Articles of Agreement and the Agreement Concerning Immunities, Exemptions and Privileges of FONPLATA in the Territories of the Member Countries. *See* Declaration of Joseph R. Profaizer ¶¶ 2-4 (Exhibits 1-3). FONPLATA is in the process of creating certified translations and will submit those translations to the Court in the near future in a separate filing.

international agreements,[4] FONPLATA acts without any profit motive and solely to achieve the public purposes related to the development and integration of the Plata Basin.

2.    Upon information and belief, on or about August 10, 2007, Plaintiff Dr. Oscar David Cortez Uzeda ("Cortez") filed an *ex parte* application for an Order of Attachment in the State Court against FONPLATA. Plaintiff's application was assigned Index No. 07/110974. Plaintiff's application contained, among other things, a proposed Notice of Motion for Summary Judgment in Lieu of a Complaint, the Affirmation of V. David Rifkin, two Affidavits of Oscar David Cortez Uzeda, an Affirmation of Eric Lindquist, an Affidavit of Rodolfo Melgarejo del Castillo, and numerous accompanying exhibits.[5]

3.    On or about Monday, August 20, 2007, the State Court, acting upon Plaintiff's *ex parte* application for an Order of Attachment, granted that order, which levied upon US$360,288 of FONPLATA's funds in its bank account in New York. FONPLATA received a partial copy of the Order of Attachment on Friday, August 24, 2007, at its offices in Santa Cruz, Bolivia and a complete copy of the Order of Attachment on Monday, August 27, 2007. A true and correct copy of the Order of Attachment is attached as Exhibit 4 to the Declaration of Joseph R. Profaizer.

---

[4] A true and correct copy of the original Spanish language versions of the Agreement Concerning Immunities, Exemptions and Privileges of FONPLATA in the Territories of the Member Countries is also attached as Exhibit 3 to the Declaration of Joseph R. Profaizer ¶ 4.

[5] Consistent with Local Civil Rule 81.1(b) ("Removal of Cases from State Courts"), Defendant has filed, contemporaneously with this filing, a copy of all records and proceedings currently on file in the state court.

4.    On Tuesday, September 4, 2007, Plaintiff filed a further Motion, By Order to Show Cause, to Confirm the Order of Attachment in the State Court. Plaintiff's Motion contained an Affidavit of Eric Lindquist dated August 29, 2007 and numerous accompanying exhibits, which included new submissions as well as additional copies of the affidavits and memorandums that Plaintiff originally submitted. On Tuesday, September 4, 2007, the State Court, acting upon Plaintiff's *ex parte* Motion By Order to Show Cause, granted Plaintiff's Motion. A true and correct copy of the Court's Order to Show Cause is attached as Exhibit 5 to the Declaration of Joseph R. Profaizer.

5.    FONPLATA has never answered, moved, or otherwise appeared in the State Court in response to the State Court's Order of Attachment or the Order to Show Cause.

6.    Removal to this Court is proper because the United States District Court for the Southern District of New York embraces New York County, New York, the place where the Order was requested and issued and the place where the State Court proceedings are proceeding.

7.    This Court has jurisdiction over the subject matter of this action pursuant to (1) 28 U.S.C. § 1330(a), because FONPLATA was at the time these proceedings were commenced and, continuously from the time that it was created, an "agency or instrumentality of a foreign state" as defined in 28 U.S.C. § 1603(b), and therefore a "foreign state" as defined in 28 U.S.C. § 1603(a) in accordance with the Foreign Sovereign Immunities Act[6] and applicable

---

[6] *See, e.g., In re EAL (Delaware) Corp.*, Civ. A. No. 93-578-SLR, 1994 WL 828320, at *4 (D. Del. Aug. 3, 1994) (Eurocontrol, an entity created pursuant to an international convention by 15 European states, constituted an "agency or instrumentality of a foreign state" under the Foreign (Continued)

international agreements, and (2) 28 U.S.C. § 1331, because Plaintiff's claims arise under the federal common law of the United States, including customary international law.

8.    The language of 28 U.S.C. § 1446(b) provides that the "notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." This Notice is timely because it was brought within 30 (thirty) days from the filing of the proceeding and initial pleading in State Court.

9.    This Notice of Removal will be filed promptly with and served upon the County Clerk of the Supreme Court of the State of New York, New York County, New York, and on Plaintiff's counsel.

10.    FONPLATA expressly reserves its right to raise any and all defenses and objections it may have at law or equity, including but not limited to, defenses relating to (a) the exercise of personal jurisdiction over FONPLATA, (b) FONPLATA's immunity from suit, attachment and execution, (c) federal common law, including customary international law, and (d) the Uniform Foreign Country Money-Judgments Recognition Act pursuant to Article 53 of the New York Civil Practice Law & Rules.

---

Sovereign Immunities Act) (citing cases)); *In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 96 F.3d 932, 941 (7th Cir. 1996) (ownership interests of more than one foreign government may be combined to reach the majority ownership required under the Foreign Sovereign Immunities Act).

WHEREFORE, FONPLATA hereby removes this action from the Supreme Court of New York, New York County, New York, to the United States District Court for the Southern District of New York.

Respectfully submitted this 11th day of September, 2007.

James E. Berger (JB 6605)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
75 East 55th Street
New York, NY 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
E-mail: jamesberger@paulhastings.com

Christopher F. Dugan (*Pro hac vice to be submitted)
Joseph R. Profaizer (*Pro hac vice to be submitted)
Adam J. van Alstyne (*Pro hac vice to be submitted)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
875 15th Street, N.W.
Washington, DC 20005
Telephone: (202) 551-1700
Facsimile: (202) 551-1705
E-mail: christopherdugan@paulhastings.com
E-mail: joeprofaizer@paulhastings.com
E-mail: adamvanalstyne@paulhastings.com

*Attorneys for Defendant*
*Fondo Financiero para el Desarrollo*
*de la Cuence del Plata (FONPLATA)*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

OSCAR DAVID CORTEZ UZEDA,

       Plaintiff,

   - against -

FONDO FINANCIERO PARA EL DESARROLLO DE
LA CUENCA DEL PLATA
A/K/A FONPLATA,

       Defendant.

---

Case Number:

**DECLARATION OF
JOSEPH R. PROFAIZER**

Pursuant to 28 U.S.C. § 1746, Joseph R. Profaizer hereby declares as follows:

1. I am an attorney with the law firm of Paul, Hastings, Janofsky & Walker LLP. I submit this declaration in support of Defendant's Notice of Removal.

2. I attach as Exhibit "1" to this declaration a true and correct copy of the original Spanish-language version of the Treaty of the Plata Basin.

3. I attach as Exhibit "2" to this declaration a true and correct copy of the original Spanish-language version of the Articles of Agreement for FONPLATA.

4. I attach as Exhibit "3" to this declaration a true and correct copy of the original Spanish-language version of the Agreement Concerning Immunities, Exemptions and Privileges of FONPLATA in the Territories of the Member Countries.

5. I attach as Exhibit "4" to this declaration a true and correct copy of the Order of Attachment issued by the Supreme Court of the State of New York, County of New York in the case assigned Index No. 07/110974 and filed with the Clerk of the Court on August 24, 2007.

6. I attach as Exhibit "5" to this declaration a true and correct copy of the Order to Show Cause issued by the Supreme Court of the State of New York, County of New York in the case assigned Index No. 07/110974 and issued on September 4, 2007.

I certify under penalty of perjury that the following is true and correct. Executed on September 11, 2007.

Joseph R. Profaizer
Paul, Hastings, Janofsky & Walker LLP
875 15th Street, N.W
Washington, DC 20005
202.551.1700 (voice), 202.551.1705 (fax)

EXHIBIT 1

## TRATADO DE LA CUENCA DEL PLATA

Los Gobiernos de las Repúblicas de Argentina, Bolivia, Brasil, Paraguay y Uruguay, representados en la I Reunión Extraordinaria de Cancilleres de los Países de la Cuenca del Plata, realizada en Brasilia, el 22 y 23 de abril de 1969;

CONVENCIDOS de la necesidad de aunar esfuerzos para el debido logro de los propósitos fundamentales señalados en la Declaración Conjunta de Buenos Aires de 27 de Febrero de 1967 y en el Acta de Santa Cruz de la Sierra de 20 de Mayo de 1968 y animados de un firme espíritu de cooperación y solidaridad;

PERSUADIDOS de que la acción mancomunada permitirá el desarrollo armónico y equilibrado así como el óptimo aprovechamiento de los grandes recursos naturales de la región y asegurará su preservación para las generaciones futuras a través de la utilización racional de esos recursos;

CONSIDERANDO asimismo que los Cancilleres han aprobado un Estatuto para el Comité Intergubernamental Coordinador de los Países de la Cuenca del Plata;

DECIDIERON suscribir el presente Tratado para afianzar la institucionalización del sistema de la Cuenca del Plata y, a ese fin, designaron sus Plenipotenciarios, que convinieron lo siguiente:

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cronembold Beltrán
SECRETARIO PRINCIPAL
FONPLATA

- 2 -

### ARTICULO I

Las Partes Contratantes convienen en mancomu-
nar esfuerzos con el objeto de promover el desarrollo armóni
co y la integración física de la Cuenca del Plata y de sus
áreas de influencia directa y ponderable.

Parágrafo único - A tal fin, promoverán en el
ámbito de la Cuenca, la identificación de áreas de interés
común y la realización de estudios, programas y obras, así
como la formulación de entendimientos operativos e instrumen
tos jurídicos que estimen necesarios y que propendan a:

a. La facilitación y asistencia en materia de
navegación.

b. La utilización racional del recurso agua,
especialmente a través de la regulación de
los cursos de agua y su aprovechamiento múl
tiple y equitativo.

c. La preservación y el fomento de la vida ani
mal y vegetal.

d. El perfeccionamiento de las interconexiones
viales, ferroviarias, fluviales, aéreas,
eléctricas y de telecomunicaciones.

e. La complementación regional mediante la pro
moción y radicación de industrias de inte-
rés para el desarrollo de la Cuenca.

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cronembold Bello
SECRETARIO PRINCIPAL
FONPLATA

- 3 -

    f. La complementación económica de áreas limí-
trofes.

    g. La cooperación mutua en materia de educa
ción, sanidad y lucha contra las enfermeda-
des.

    h. La promoción de otros proyectos de interés
común y en especial aquellos que tengan re
lación con el inventario, evaluación y el
aprovechamiento de los recursos naturales
del área.

    i. El conocimiento integral de la Cuenca del
Plata.

### ARTICULO II

    Los Ministros de Relaciones Exteriores de los
Países de la Cuenca del Plata se reunirán una vez por año,
en fecha que será sugerida por el Comité Intergubernamental
Coordinador, a fin de trazar directivas básicas de política
común para el logro de los propósitos establecidos en este
Tratado; apreciar y evaluar los resultados obtenidos; cele-
brar consultas sobre la acción de sus respectivos Gobiernos
en el ámbito del desarrollo multinacional integrado de la
Cuenca; dirigir la acción del Comité Intergubernamental Coor
dinador y, en general, adoptar las providencias necesarias pa
ra el cumplimiento del presente Tratado a través de las reali
zaciones concretas que él demande.

ES COPIA FIEL DEL ORIGINAL

Dr Ricardo Gropenibold Bello
SECRETARIO PRINCIPAL
FONPLATA

- 4 -

Parágrafo 1. - Los Ministros de Relaciones Exteriores podrán reunirse en sesión extraordinaria, previa convocatoria efectuada por el Comité Intergubernamental Coordinador a solicitud de por lo menos tres de las Partes Contratantes.

Parágrafo 2. - Si excepcionalmente el Ministro de Relaciones Exteriores de una de las Partes Contratantes no pudiera concurrir a una reunión, ordinaria o extraordinaria, se hará representar por un Delegado Especial.

Parágrafo 3. - Las decisiones tomadas en reuniones efectuadas de conformidad con este artículo requerirán siempre el voto unánime de los cinco países.

ARTICULO III

Para los efectos del presente Tratado, el Comité Intergubernamental Coordinador es reconocido como el órgano permanente de la Cuenca, encargado de promover, coordinar y seguir la marcha de las acciones multinacionales que tengan por objeto el desarrollo integrado de la Cuenca del Plata, y de la asistencia técnica y financiera que organice con el apoyo de los organismos internacionales que estime convenientes, y ejecutar las decisiones que adopten los Ministros de Relaciones Exteriores.

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cronembold Bello
SECRETARIO PRINCIPAL
FONPLATA

- 5 -

Parágrafo 1. - El Comité Intergubernamental
Coordinador se regirá por el Estatuto aprobado en la Segun-
da Reunión de Cancilleres de los Países de la Cuenca del Pla-
ta, celebrada en Santa Cruz de la Sierra, Bolivia, del 18 al
20 de Mayo de 1968.

Parágrafo 2. - En reunión extraordinaria, a
tal fin especialmente convocada, los Ministros de Relaciones
Exteriores podrán, siempre con el voto unánime de los cinco
países, reformar el Estatuto del Comité Intergubernamental
Coordinador.

## ARTICULO IV

Sin perjuicio de las disposiciones internas
de cada país, serán órganos de cooperación y asesoramiento
de los Gobiernos las Comisiones o Secretarías nacionales
constituídas de acuerdo con la Declaración Conjunta de Bue-
nos Aires. Tales Comisiones o Secretarías podrán establecer
contactos bilaterales, obedeciendo siempre a los criterios
y normas de los países interesados, manteniendo debidamente
informado, cuando sea el caso, al Comité Intergubernamental
Coordinador.

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cronembold Bello
SECRETARIO PRINCIPAL
FONPLATA

- 6 -

## ARTICULO V

La acción colectiva entre las Partes Contratan tes deberá desarrollarse sin perjuicio de aquellos proyectos y empresas que decidan ejecutar en sus respectivos territorios, dentro del respeto al derecho internacional y según la buena práctica entre naciones vecinas y amigas.

## ARTICULO VI

Lo establecido en el presente Tratado no inhibirá a las Partes Contratantes para concluir acuerdos específicos o parciales, bilaterales o multilaterales, encaminados al logro de los objetivos generales de desarrollo de la Cuenca.

## ARTICULO VII

El presente Tratado se denominará Tratado de la Cuenca del Plata y tendrá duración ilimitada.

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cronenbold Bello
SECRETARIO PRINCIPAL
FONPLATA

- 7 -

ARTICULO VIII

El presente Tratado será ratificado por las Partes Contratantes y los Instrumentos de Ratificación serán depositados ante el Gobierno de la República Federativa del Brasil.

Parágrafo 1. - El presente Tratado entrará en vigor treinta días después de depositados los Instrumentos de Ratificación de todas las Partes Contratantes.

Parágrafo 2. - Mientras las Partes Contratantes procedan a la ratificación del presente Tratado y al depósito de los Instrumentos de Ratificación, en la acción multinacional emprendida para el desarrollo de la Cuenca del Plata, se sujetarán a lo acordado en la Declaración Conjunta de Buenos Aires y en el Acta de Santa Cruz de la Sierra.

Parágrafo 3. - La intención de denunciar el presente Tratado será comunicada por una Parte Contratante a las demás Partes Contratantes por lo menos noventa días antes de la entrega formal del Instrumento de Denuncia al Gobierno de la República Federativa del Brasil. Formalizada la denuncia, los efectos del Tratado cesarán, para la Parte Contratante denunciante, en el plazo de un año.

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cronembold Bello
SECRETARIO PRINCIPAL
FONPLATA

- 8 -

EN FE DE LO CUAL, los infrascritos Plenipoten-
ciarios, después de haber depositado sus plenos poderes, que
se han encontrado en buena y debida forma, firman el presen-
te Tratado.

HECHO en la ciudad de Brasilia, a los veinte
y tres días del mes de Abril del año de mil novecientos se-
senta y nueve, en un solo ejemplar, en los idiomas español y
portugués, que quedará depositado en los archivos del Minis-
terio de Relaciones Exteriores del Brasil, el cual expedirá
copias autenticadas a los países signatarios.

ES COPIA.-

Embajador Manuel Avila

Embajador Hugo Boatti Ossorio

Embajador Antonio Francisco Azeredo da Silveira

Embajador Adolfo Polff Martínez

Embajador Alberto Guzmán Soriano

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cromembóit Bello
SECRETARIO PRINCIPAL
FONPLATA

///nos Aires, 23 de diciembre de 1971.-

La Dirección Nacional de Ceremonial
CERTIFICA por la presente que las firmas que
anteceden y dicen: Manuel AVILA; Antonio Fran-
cisco ALFREDO DA SILVEIRA; Adolfo TORRE MARTINEZ
y Alberto GUZMAN SORIANO, corresponden a SS. EE.
los señores Embajadores del Paraguay, Brasil,
Uruguay y Bolivia acreditados en la República.———

JUAN JOSE CANDE CEBALLOS
CONSEJERO DE EMBAJADA
JEFE DEPTO. ORGANISMOS Y FRANQUICIAS DIPLOMATICAS
DIRECCION NACIONAL DE CEREMONIAL

ES COPIA FIEL DEL ORIGINAL

Dr Ricardo Cronembold Bello
SECRETARIO PRINCIPAL
F O N P L A T A

## PLATA BASIN TREATY

The Governments of the Republic of Argentina, Bolivia, Brazil, Paraguay and Uruguay, represented in the I Extraordinary Meeting of Chancellors of the Plata Basin Countries, held in Brasilia, on April 22nd and 23rd, 1969;

CONVINCED of the necessity of combining efforts to comply with the due achievement of the fundamental purposes provided in the Joint Declaration of Buenos Aires of February 27, 1967 and the Santa Cruz de la Sierra Minutes of May 20th, 1968 and under a firm spirit of cooperation and solidarity;

PERSUADED that the joint action will allow the harmonic and balanced development, as well as the optimal exploitation of the region's abundant natural resources and will ensure its preservation for the forthcoming generations through the rational use of those resources;

WHEREBY the Chancellors likewise have approved a Statute for the Inter-Governmental Coordinator Committee of the Plata Basin Countries;

RESOLVED to execute the present Treaty in order to guarantee the institutionalization of the Plata Basin system and, for that purpose, appointed their Plenipotentiary, having agreed the following:

1

ARTICLE I            The Contracting Parties agree in combining efforts with the objective of promoting a harmonic development and the physical integration of the Plata Basin and its direct and considerable areas of influence.

Sole paragraph. With such purpose, they will promote, within the Basin scope, the identification of common interest areas and the performance of studies, programs and works, as well as the formulation of operative understandings and legal instruments they deem necessary, which purports to:

a)  The facilitation and assistance in the navigation matter.

b)  The rational use of the water resource, specially through the regulation of watercourses and its multiple and fair exploitation.

c)  Preservation and encouragement of animal and vegetal life.

d)  Perfection of lane, railway, fluvial, airway, electric and telecom interconnections.

e)  Regional complementation through the encouragement and establishment of industries of interest for the development of the Basin.

f)  Economic complementation of bordering areas.

g)  Mutual cooperation regarding education, health and disease control matters.

h)  Encouragement of other projects of common interest and specially those related to the inventory, evaluation and exploitation of natural resources of the area.

i)  Complete knowledge of the Plata Basin.

ARTICLE II           The Ministers of Foreign Affairs of the Plata Basin Countries will meet once a year, on a date suggested by the Inter-Governmental Coordinator Committee, in order to outline the basic guidelines of common policy for the achievement of the purposes established in this Treaty; assess and evaluate the results obtained; hold meetings regarding the actions of their respective Governments in the scope of the Basin's integrated multinational development; conduct the Inter-Governmental Coordinator Committee activity and, in general, undertake the necessary provisions for

2

the fulfillment of the present Treaty through the specific actions required by it.

Sub-Paragraph 1°    The Ministers of Foreign Affairs may meet in extraordinary sessions, with previous summons made by the Inter-Governmental Coordinator Committee upon request of at least three of the Contracting Parties.

Sub-Paragraph 2°    If exceptionally, the Foreign Relation Minister of one of the Contracting Parties could not attend one meeting, whether ordinary or extraordinary, a Special Delegate will represent him.

Sub-Paragraph 3°    Decisions adopted in meetings held in accordance with this article will always require the unanimous vote of the five countries.

ARTICLE III    For the purposes of the present Treaty, the Inter-Governmental Coordinator Committee is recognized as the Basin's permanent body, in charge of promoting, coordinating, and following up on the progress of the multinational acts, which have as objective the Plata Basin's integrated development, and the technical and financial assistance organized with the support of the international organizations deemed convenient, and execute the decisions adopted by the Ministers of Foreign Affairs.

Sub-Paragraph 1°    The Inter-Governmental Coordinator Committee will abide by the Statute approved in the Second Meeting of the Chancellors of the Plata Basin Countries, held in Santa Cruz de la Sierra, Bolivia, from May 18th to 20th, 1968.

Sub-Paragraph 2°    In extraordinary meeting, summoned specially for such purpose, the Ministers of Foreign Affairs may, always with the unanimous vote of the five countries, amend the Statute of the Inter-Governmental Coordinator Committee.

ARTICLE IV    Without prejudice to the internal regulations of each country, the cooperation and advisory bodies of the Governments shall be the national Commissions or Secretaries incorporated in accordance to the Joint Declaration of Buenos Aires.  Such Commissions and Secretaries may establish bilateral contacts, always subject to the criterion and regulations of the interested countries, maintaining duly informed, as the case may be, to the Inter-Governmental Coordinator Committee.

ARTICLE V        The collective action between the Contracting Parties shall develop without prejudice those projects and enterprises they decide to execute in their respective territories, within the respect to international law and in accordance with the good practice among neighbors and friendly nations.

ARTICLE VI       The provisions in the present Treaty shall not inhibit the Contracting Parties from concluding specific or partial, bilateral or multilateral agreements, oriented to the fulfillment of the general objectives of the Basin's development.

ARTICLE VII      The present Treaty shall be named Plata Basin Treaty and shall be open-ended.

ARTICLE VIII     The present Treaty shall be ratified by the Contracting Parties and the Ratification Instruments shall be deposited before the Government of the Federative Republic of Brazil.

Sub-Paragraph 1°     The present Treaty shall enter in force thirty days after all the Contracting Parties' Instrument of Ratification are deposited.

Sub-Paragraph 2°     While the Contracting Parties proceed with the ratification of the present Treaty and the deposit of the Ratification Instruments, the multinational action undertaken for the development of the Plata Basin will be subject to what was agreed in the Joint Declaration of Buenos Aires and in the Santa Cruz de la Sierra Minute.

Sub-Paragraph 3°     A Contracting Party shall give to the other Contracting Parties a ninety day notice of its intention to denounce the present Treaty, prior to the formal delivery of the Denunciation Instrument to the Government of the Federative Republic of Brazil.    Once the denounce is formalized, in a term of a year, the effects of the Treaty will cease for the denouncing Contracting Party.

IN WITNESS THEREOF, the undersigned Plenipotentiaries, after having deposited its absolute powers of attorney, which were found to be in good and due form, signed the present Treaty.

DRAFTED in the city of Brasilia, on April 23rd, 1969, in one copy, in Spanish and Portuguese languages, which shall remain deposited in the files of the Brazilian Ministry of Foreign Affairs, the same that will extend legalized copies to the signatory countries.

4

NICANOR COSTA MENDEZ
FOR THE REPUBLIC OF ARGENTINA

VICTOR HOZ DE VILA
FOR THE REPUBLIC OF BOLIVIA

JOSÉ DE MAGALHAES PINTO
FOR THE FEDERATIVE REPUBLIC OF
BRAZIL

RAUL SAPENA PASTOR
FOR THE REPUBLIC OF PARAGUAY

VENANCIO FLORES
FOR THE ORIENTAL REPUBLIC OF URUGUAY

DEPOSIT OF THE RATIFICATION INSTRUMENTS:

| | |
|---|---|
| Federative Republic of Brazil: | October 16, 1969 |
| Republic of Paraguay: | February 11, 1970 |
| Republic of Argentina: | May 22, 1970 |
| Oriental Republic of Uruguay: | May 25, 1970 |
| Republic of Bolivia: | July 15, 1970 |

ENTRY INTO FORCE:                                  August 14, 1970

**EXHIBIT 2**

## CONVENIO CONSTITUTIVO DEL FONDO FINANCIERO
## PARA  EL DESARROLLO DE LA CUENCA DEL PLATA

Los gobiernos de los Países Miembros del Tratado
de la Cuenca del Plata, en cumplimiento de la Recomendación N°4
del Acta de Santa Cruz de la Sierra; el párrafo IV a) iii) del
Acta de Brasilia; las Resoluciones N°5 (IV) y 44 (V) de las Reu
niones de Cancilleres de la Cuenca del Plata y, animados del
firme propósito de impulsar el cumplimiento de los objetivos de
promoción del desarrollo armónico y la integración física de la
Cuenca del Plata y de sus áreas de influencia directa y pondera
ble, convienen en suscribir el presente Convenio de acuerdo a
las siguientes cláusulas:

## CAPITULO  I
## DE LA NATURALEZA Y SEDE

ARTICULO 1º.- El Fondo Financiero para el desarrollo de la Cuenca
del Plata, en adelante el Fondo, es una persona jurídica interna

ES COPIA FIEL DEL ORIGINAL

CARLOS MEZZANO RAVA
EX-MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cranombola Bello
SECRETARIO PRINCIPAL
FONPLATA

cional, de duración ilimitada.

Se regirá por las disposiciones contenidas en el presente Convenio y su reglamento.

ARTICULO 2º- El Fondo tendrá su sede permanente en uno de los Países Miembros.

## CAPITULO II
### DEL OBJETO

ARTICULO 3º- El objeto del Fondo será financiar, dentro de los términos del Artículo I del Tratado de la Cuenca del Plata, la realización de estudios, proyectos, programas y obras, tendientes a promover el desarrollo armónico y la integración física de la Cuenca del Plata, destinando a tales efectos sus recursos propios y los que gestione y obtenga de otras fuentes de financiamiento, en la forma prevista en los incisos b) y c) del Artículo 4º.

## CAPITULO III
### DE LAS FUNCIONES

ARTICULO 4º- Serán funciones del Fondo:

ES COPIA FIEL DEL ORIGINAL

CARLOS PEZZANO RAVA
R.A. MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Gramegola Betta
SECRETARIO PRINCIPAL
FONPLATA

a) Conceder préstamos, fianzas y avales;

b) Gestionar la obtención de préstamos internos y externos con la responsabilidad solidaria de los Países Miembros;

c) Gestionar y obtener recursos por encargo de uno o más Países Miembros. Estos recursos no obligarán al Fondo, obligando solamente a los Contratantes de los préstamos así obtenidos;

d) Apoyar financieramente la realización de estudios de pre inversión, con el propósito de identificar oportunidades de inversión o proyectos de interés para la Cuenca en función de lo que establece el inciso f) del presente artículo;

e) Apoyar financieramente la contratación de asistencia y asesoramiento técnicos;

f) Ejercer actividades de agente y órgano asesor del Comité Intergubernamental Coordinador de los Países de la Cuenca del Plata cuando éste así lo requiera, y

g) Ejercer todas aquellas funciones que sean propicias para el mejor cumplimiento de sus objetivos.

### CAPITULO IV

#### DE LOS RECURSOS DEL FONDO

ARTICULO 5°- Los recursos propios del Fondo ascenderán a cien

ES COPIA FIEL DEL ORIGINAL    CARLOS PEZZANO RAVA
MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL
Dr. Ricardo Crosembold Bello
SECRETARIO PRINCIPAL
FONPLATA

millones de dólares estadounidenses (U$S 100.000.000,--).

<u>ARTICULO 6°</u>- De los recursos propios del Fondo inicialmente se-
rán aportados veinte millones de dólares estadounidenses
(U$S 20.000.000,--). Estos recursos se destinarán preferentemen
te a financiar estudios de prefactibilidad, factibilidad y dise
ño final.

CAPITULO   V

<u>DE LAS FORMAS DE INTEGRACION</u>

<u>ARTICULO 7°</u>- La integración de los veinte millones de dólares
estadounidenses (U$S 20.000.000,--), a que se refiere el artícu
lo anterior, se realizará en la siguiente forma:

| | | |
|---|---|---|
| Argentina | U$S | 6.670.000 |
| Brasil | " | 6.670.000 |
| Bolivia | " | 2.220.000 |
| Paraguay | " | 2.220.000 |
| Uruguay | " | 2.220.000 |
| | U$S | 20.000.000 |

<u>ARTICULO 8°</u>- Los aportes se efectuarán en un 50 % en dólares
estadounidenses de libre convertibilidad y 50 % en las monedas
de los respectivos Países Miembros, con cláusulas de ajuste a

ES COPIA FIEL DEL ORIGINAL

CARLOS PEZZANO RAVA
MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Gruneubold-Berto
SECRETARIO PRINCIPAL
FONPLATA

las paridades con el dólar estadounidense.

ARTICULO 9°- Los aportes de la Argentina y del Brasil se efectuarán en un plazo de tres años. Los de Bolivia, Paraguay y Uruguay en un plazo de diez años. Los aportes se efectuarán en cuotas anuales proporcionales.

ARTICULO 10- Los plazos establecidos en el artículo anterior se contarán a partir de la fecha de entrada en vigencia del presente Convenio.

ARTICULO 11- La integración de los restantes ochenta millones de dólares estadounidenses (U$S 80.000.000,--) será cumplida en la oportunidad que resuelva la Asamblea de Gobernadores del Fondo, con el voto favorable de todos sus miembros.

## CAPITULO VI
### DE LA FINANCIACION DE OBRAS Y DE ESTUDIOS

ARTICULO 12- La financiación de obras se acordará a proyectos que, además de ser factibles técnica y económicamente, respondan al desarrollo armónico y a la integración física de la Cuenca del Plata, de acuerdo al Artículo I del Tratado.

ARTICULO 13- Se tendrá en cuenta para la aprobación del financia

ES COPIA FIEL DEL ORIGINAL

CARLOS PEZZANO RAVA
MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cronembold Bello
SECRETARIO PRINCIPAL
F O N P L A T A

miento de estudios de prefactibilidad, factibilidad, diseño fi-
nal y obras, una distribución geográfica armónica entre los Paí
ses Miembros, considerando con preferencia a Bolivia, Paraguay
y Uruguay.

Con los veinte millones de dólares estadounidenses
(U$S 20.000.000,--), inicialmente aportados, se atenderá prefe-
rentemente la financiación de estudios de prefactibilidad, fac-
tibilidad y diseño final de acuerdo a lo dispuesto en el Artícu
lo 6°.

ARTICULO 14- Para las obras y estudios referidos en los Artícu-
los 12 y 13, se dará prioridad de contratación a las firmas con-
sultoras y de ingeniería, profesionales y técnicos de los Países
de la Cuenca del Plata.

CAPITULO VII

DE LA ORGANIZACION Y ADMINISTRACION

ARTICULO 15- El Fondo será administrado por una Asamblea de Go-
bernadores y por un Directorio Ejecutivo.

ARTICULO 16- Tanto en la Asamblea de Gobernadores como en el Di-
rectorio Ejecutivo, cada País Miembro tendrá derecho a un voto.

ARTICULO 17- Los Gobernadores, los Directores Ejecutivos y sus

ES COPIA FIEL DEL ORIGINAL

CARLOS PEZZANO RAVA
PA/ MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cronembold Betto
SECRETARIO PRINCIPAL
FONPLATA

alternos, serán retribuidos por sus respectivos gobiernos.

## TITULO I

### DE LA ASAMBLEA DE GOBERNADORES

ARTICULO 18- La Asamblea de Gobernadores estará integrada por cinco Miembros. Cada país nombrará un Titular y un Alterno.

ARTICULO 19- Todas las facultades del Fondo residirán en la Asamblea de Gobernadores, que podrá delegarlas en el Directorio Ejecutivo con las siguientes excepciones:

a) Aprobar el reglamento del Fondo y sus modificaciones;

b) Aprobar el presupuesto anual del Fondo;

c) Decidir sobre la interpretación del Convenio Constitutivo del Fondo y de su Reglamento; la modificación del monto de recursos propios y su modo de integración;

d) Proponer a los gobiernos de los Países Miembros la modificación del Convenio Constitutivo del Fondo;

e) Contratar auditores externos nacionales de los Países Miembros;

f) Considerar el informe de auditoría, la Memoria, el Balance General y el Estado de Pérdidas y Ganancias del Fondo;

g) Decidir sobre la participación de otros países u organismos en el incremento de los recursos propios del Fondo;

ES COPIA FIEL DEL ORIGINAL

CARLOS PEZZANO RAVA
MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Crottembold Bello
SECRETARIO PRINCIPAL
FONPLATA

h) Determinar la política de afectación de fondos;

i) Determinar la forma de liquidación del Fondo en caso de disolución.

ARTICULO 20- Las decisiones relativas a los literales a), c), d), g), h) e i), del artículo anterior, serán tomadas por unanimidad. En los demás casos la Asamblea de Gobernadores podrá, por unanimidad, adoptar un sistema de votación distinto.

ARTICULO 21- La Asamblea de Gobernadores se reunirá ordinariamente una vez al año, en la fecha y en el lugar en que se celebre la correspondiente reunión ordinaria anual de Cancilleres de los Países de la Cuenca del Plata.

ARTICULO 22- La Asamblea, al constituirse, designará un Presidente, de entre sus miembros titulares, quien ejercerá el cargo hasta la próxima reunión ordinaria. El cambio de Presidente se efectuará en forma rotativa siguiendo el orden alfabético de los países.

ARTICULO 23- En caso de impedimento del Presidente de turno lo reemplazará interinamente el Gobernador Titular del país que le sigue en el orden alfabético.

ARTICULO 24- La Asamblea podrá reunirse extraordinariamente en

ES COPIA FIEL DEL ORIGINAL

CARLOS PEZZANO RAVA
PAJ    MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr Ricardo Cronembold Bello
SECRETARIO PRINCIPAL
FONPLATA

el lugar y fecha que fije el Directorio Ejecutivo.

## TITULO II
### DEL DIRECTORIO EJECUTIVO

ARTICULO 25- El Directorio Ejecutivo estará integrado por cinco Miembros. Cada país nombrará un Titular y podrá designar un Alterno.

ARTICULO 26- La Presidencia del Directorio Ejecutivo será ejercida por períodos anuales, siguiendo el orden alfabético de los países.

ARTICULO 27- En caso de impedimento del Presidente de turno le reemplazará interinamente el Director Titular del país que le sigue en el orden alfabético.

ARTICULO 28- El Directorio será responsable de la conducción de las operaciones del Fondo y, para ello, ejercerá las facultades que le son propias y todas aquellas que le delegue la Asamblea de Gobernadores.

ARTICULO 29- Son atribuciones del Directorio Ejecutivo:

   a) Cumplir y hacer cumplir las decisiones de la Asamblea de Gobernadores;

ES COPIA FIEL DEL ORIGINAL    CARLOS PEZZANO RAVA
PAZ MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Crosembold Batig
SECRETARIO PRINCIPAL
FONPLATA

b) Conocer y decidir la concesión de préstamos, fianzas y avales, dentro de los lineamientos de la política de afectación de fondos establecida por la Asamblea de Gobernadores;

c) Someter el presupuesto anual del Fondo a consideración de la Asamblea de Gobernadores;

d) Someter anualmente a la consideración de la Asamblea de Gobernadores, la Memoria, el Balance General y el estado de Pérdidas y Ganancias;

e) Convocar a reuniones extraordinarias de la Asamblea de Gobernadores con el voto de por lo menos tres de sus Miembros;

f) Proponer a la Asamblea de Gobernadores reformas del Reglamento del Fondo;

g) Contratar personal técnico y administrativo.

ARTICULO 30.- El Directorio Ejecutivo se reunirá con la frecuencia que las operaciones del Fondo lo requieran.

ARTICULO 31.- Las decisiones del Directorio Ejecutivo se ajustarán al sistema de votación que establezca el Reglamento y la Asamblea de Gobernadores.

ES COPIA FIEL DEL ORIGINAL

CARLOS PEZZANO RAVA
MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cromenhold Bello
SECRETARIO PRINCIPAL
FONPLATA

## CAPITULO VIII

### DEL EJERCICIO FINANCIERO, BALANCE Y UTILIDADES

ARTICULO 32- El ejercicio financiero del Fondo será por períodos anuales, cuya fecha de iniciación establecerá el Directorio Ejecutivo.

ARTICULO 33- Se confeccionará el Balance General Anual y el Estado de Pérdidas y Ganancias, al cierre del ejercicio financiero.

ARTICULO 34- El Fondo contratará los servicios de auditores externos, nacionales de los Países Miembros, los cuales dictaminarán sobre el Balance General y el Estado de Pérdidas y Ganancias.

ARTICULO 35- Las utilidades que el Fondo obtenga en el ejercicio de sus operaciones se incorporarán a los recursos del mismo.

## CAPITULO IX

### DE LA DURACION Y DISOLUCION

ARTICULO 36- El Fondo será de duración ilimitada.

ARTICULO 37- Sin perjuicio de lo dispuesto en el artículo ante-

ES COPIA FIEL DEL ORIGINAL

CARLOS PEZZANO RAVA
MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cronembold Bello
SECRETARIO PRINCIPAL
FONPLATA

rior, el Fondo podrá ser disuelto por la decisión unánime de los Países Miembros. En el caso de retiro de dos o más Países Miembros, la disolución se producirá de pleno derecho.

ARTICULO 38- Cualquier país Miembro podrá retirarse del Fondo mediante comunicación escrita ante el Directorio Ejecutivo. El retiro efectivo se producirá al cumplirse el plazo de un año de dicha comunicación. Aún después de retirarse, dicho país continuará siendo responsable por todas las obligaciones que tenga con el Fondo en la fecha de entrega de la notificación de retiro. La restitución de los aportes se efectuará una vez canceladas todas las deudas con el Fondo.

ARTICULO 39- En el caso de que un país signatario dejare de ser miembro del Fondo, no tendrá responsabilidad alguna con respecto a préstamos, fianzas o avales, realizados con posterioridad al depósito de la denuncia.

Los derechos y obligaciones del país que dejase de ser miembro, se determinarán de conformidad con el Balance de Liquidación Especial que se elabore, a la fecha en que notificó su voluntad de retirarse.

CAPITULO X

DE LAS INMUNIDADES, EXENCIONES Y PRIVILEGIOS

ARTICULO 40- Los bienes y demás activos del Fondo, así como las

ES COPIA FIEL DEL ORIGINAL    CARLOS PEZZANO RAVA
LA MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cropenbold Bello
SECRETARIO PRINCIPAL
FONPLATA

operaciones realizadas por éste, en cualquiera de los Países
Miembros en que se encuentren,gozarán de las mismas inmunida-
des, exenciones y privilegios que los acordados entre el Comi-
té Intergubernamental Coordinador de los Países de la Cuenca
del Plata y sus Países Miembros.

ARTICULO 41- Los Gobernadores y Directores, sus Alternos y los
funcionarios técnicos y administrativos del Fondo, que no fue-
ran nacionales del país en que desempeñan sus funciones, goza-
rán en los mismos de idénticas inmunidades, exenciones y pri-
vilegios, en cuanto a sus personas y bienes, que las acordadas
a funcionarios del Comité Intergubernamental Coordinador de los
Países de la Cuenca del Plata.


CAPITULO XI

DE LAS  DISPOSICIONES FINALES

ARTICULO 42- El presente Convenio entrará en vigor treinta días
después de depositados los instrumentos de ratificación de to-
dos los países contratantes. Los instrumentos de ratificación
serán depositados en la Sede del Comité Intergubernamental Coor
dinador de los Países de la Cuenca del Plata.

ARTICULO 43- La firma y ratificación del presente Convenio no

ES COPIA FIEL DEL ORIGINAL

CARLOS PEZZANO RAVA
EX. MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cromboid Bell
SECRETARIO PRINCIPAL
FONPLATA

podrán ser objeto de reservas.

ARTICULO 44- En el plazo de treinta días a partir de la entrada
en vigencia del presente Convenio, los Países Miembros comuni-
carán a la Secretaría del Comité Intergubernamental Coordinador
de los Países de la Cuenca del Plata, los nombres de las perso-
nas designadas como Gobernadores y Directores Ejecutivos.

ARTICULO 45- En el plazo de treinta días a partir de la fecha
en que hayan sido acreditados los Gobernadores y Directores
Ejecutivos de los Países Miembros, el Comité Intergubernamental
Coordinador de los Países de la Cuenca del Plata convocará a la
primera reunión del Directorio Ejecutivo, a objeto de preparar
el Reglamento y el Presupuesto del Fondo, debiendo elevar los
proyectos respectivos a la Asamblea de Gobernadores, dentro de
un plazo de sesenta días.

ARTICULO 46- La sede permanente del Fondo será establecida por
el Comité Intergubernamental Coordinador de los Países de la
Cuenca del Plata.

HECHO en la ciudad de Buenos Aires, Capital de la
República Argentina, a los doce días del mes de junio del

ES COPIA FIEL DEL ORIGINAL

CARLOS PEZZANO RAVA
R.AV. MINISTRO
DIRECTOR DE TRATADOS

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Gronemberg Bello
SECRETARIO PRINCIPAL
FONPLATA

año mil novecientos setenta y cuatro, en dos textos auténticos
en los idiomas español y portugués.


POR EL GOBIERNO DE LA                    POR EL GOBIERNO DE LA
REPUBLICA DE BOLIVIA              REPUBLICA FEDERATIVA DEL BRASIL


ALBERTO GUZMAN SORIANO            ANTONIO F. AZEREDO DA SILVEIRA
Ministro de Relaciones                 Ministro de Estado
Exteriores y Culto                   de Relaciones Exteriores


POR EL GOBIERNO DE LA                    POR EL GOBIERNO DE LA
REPUBLICA DEL PARAGUAY            REPUBLICA ORIENTAL DEL URUGUAY


RAUL SAPENA PASTOR                  JUAN  CARLOS BLANCO
Ministro de Relaciones             Ministro de Relaciones
Exteriores                              Exteriores


POR EL GOBIERNO DE LA
REPUBLICA ARGENTINA


ALBERTO JUAN VIGNES
Ministro  de Relaciones
Exteriores y Culto


'S COPIA FIEL DEL ORIGINAL       CARLOS PEZZANO RAV·
                                 RAV MINISTRO
                                 DIRECTOR DE TRATADOS

Dr Ricardo Cronenhold Bello ,
SECRETARIO PRINCIPAL
F O N P L A T A

ARTICLES OF AGREEMENT

ARTICLES OF AGREEMENT OF THE FINANCIAL FUND

FOR DEVELOPMENT OF THE PLATA RIVER BASIN

The Governments of Member Countries of the Plata River Basin Treaty, in observance of Recommendation № 4 of the Memorandum of Santa Cruz de la Sierra; paragraph IV, a) iii) of the Memorandum of Brasilia; the Resolutions № 5 ) (IV) and 44 (V) of the Meetings of Secretaries of State of the Plata River Basin and, prompted by the firm purpose of supporting the achievement of objectives of promotion of harmonious development and physical integration of the Plata River Basin and its areas of direct and ponderable influence, agree to execute the present Agreement according to the following sections:

CHAPTER I

NATURE AND HEADQUARTERS

Article 1     The Financial Fund for Development of the Plata River Basin, hereafter the Fund, is an international juridical person of unlimited duration.

         The Fund shall be governed by the provisions contained in this Agreement and its Rules.

Article 2     The Fund shall have its permanent headquarters in one of the Member Countries.

1

ARTICLES OF AGREEMENT

## CHAPTER II

PURPOSE

Article 3    The purpose of the Fund shall be to finance, within the terms of Article I of the Plata River Basin Treaty, the performance of studies, projects, programs, and works designed to promoting harmonious development and physical integration of the Plata River Basin, allocating for such purpose its own financial resources and those it may negotiate and obtain from other sources of financing, in the manner provided for in subparagraphs b) and c) of Article 4 (*)

## CHAPTER III

DUTIES

Article 4    The duties of the Fund will be:

a)    To grant loans, guarantees, and endorsements;

b)    To procure internal and external loans with the joint and several liability of Member Countries;

c)    To negotiate and obtain funds upon request of one or more Member Countries. These funds shall not bind the Fund, but only the Contracting Parties of any Loans so obtained.

d)    To financially support the performance of pre-investment studies, with the purpose of identifying investment opportunities or projects of interest for the Plata River Basin as provided for in subparagraph f) of this Agreement; (**)

e)    To financially support the hiring of expert assistance and advice;

---

(**)    Resolution R.D. 75th-558/94
"1    To interpret at the outset, that in order to fulfill the objective provided for in Article 3 of its Articles of Agreement, FONPLATA may manage fiduciary funds, with such intervention as well as the operations to be carried out, being subject to the provisions of the relevant trust agreement."
"2    To establish that, in view of the provisions in the preceding paragraph, no preferences of any kind shall be applicable, except for those resulting from provisions of the relevant trust agreement."
(**)    Resolution A.G. VII-33/84. Interpretation regarding,
"Contingent Recovery Operations." FONPLATA finances technical assistance operations for contingent recovery where there is a reasonable possibility that they will lead to a loan operation, by FONPLATA or by another credit organization. If the loan is approved, the amount of funds for technical assistance is

2

ARTICLES OF AGREEMENT

incorporated into the loan and reimbursed to FONPLATA with the first disbursement. If that should not occur, the operation shall, for all purposes, become non-refundable."

f)  To conduct activities as agent and advisory body to the Intergovernmental Coordination Committee of Countries of the Plata River Basin where the former so requests it; and

g)  To perform any duties that may be appropriate for the best fulfillment of its objectives.

CHAPTER IV

RESOURCES OF THE FUND

Article 5    The financial resources of the Fund shall amount to one hundred million dollars (U$S100,000,000).

---

(*)  Resolution A.G. VI-28/83
"1.  To increase the financial resources of FONPLATA referred to in Article 5 of the Articles of Agreement, in the sum equivalent to one hundred million U.S. dollars (U$S100,000,000), payable in the currencies of the respective Member Countries, with value-maintenance clauses in respect of the United States of America Dollar. 2. Capital contributions shall be made within a period of 8 years. Those of Argentina and Brazil starting 1985 and those of Bolivia, Paraguay, and Uruguay, starting 1986, by means of annual installments payable up to June 15th of each year. Countries may make advance payments by own decision, or upon request by FONPLATA. 3. Payment of the capital increase provided for in Article 1 shall be made according to the following allocation and schedule:

ALLOCATION AND SCHEDULE FOR CAPITAL INCREASE PAYMENTS
PAYABLE IN LOCAL CURRENCIES (Equivalent to U.S. dollars)

| YEAR | COUNTRIES | | | | | AMOUNT |
|------|-----------|--------|-------|----------|---------|--------|
|      | Argentina | Bolivia | Brazil | Paraguay | Uruguay |        |
| 1985 | 4,166,666 |         | 4,166,666 |         |         | 8,333,332 |
| 1986 | 4,166,666 | 1,388,889 | 4,166,666 | 1,388,889 | 1,388,889 | 12,499,999 |
| 1987 | 4,166,666 | 1,388,889 | 4,166,666 | 1,388,889 | 1,388,889 | 12,499,999 |
| 1988 | 4,166,666 | 1,388,889 | 4,166,666 | 1,388,889 | 1,388,889 | 12,499,999 |
| 1989 | 4,166,666 | 1,388,889 | 4,166,666 | 1,388,889 | 1,388,889 | 12,499,999 |
| 1990 | 4,166,666 | 1,388,889 | 4,166,666 | 1,388,889 | 1,388,889 | 12,499,999 |
| 1991 | 4,166,666 | 1,388,889 | 4,166,666 | 1,388,889 | 1,388,889 | 12,499,999 |
| 1992 | 4,166,670 | 1,388,889 | 4,166,670 | 1,388,889 | 1,388,889 | 12,500,007 |
| 1993 |           | 1,388,889 |         | 1,388,889 | 1,388,889 | 4,166,667 |
| TOTAL | 33,333,332 | 11,111,112 | 33,333,332 | 11,111,112 | 11,111,112 | 100,000,000 |

3

ARTICLES OF AGREEMENT

Article 6    From the Fund's own financial resources, twenty million U.S. Dollars (U$S20,000,000) will be paid in. These funds shall de intended preferably to finance pre-feasibility, feasibility, and final design studies.

## CHAPTER V

## METHOD OF PAYMENT

Article 7    Payment of the twenty million U.S. Dollars (U$S20,000,000) referred-to in the preceding article, shall be made as follows:

| | | |
|---|---|---|
| Argentina | U$S | 6,670,000 |
| Brazil | U$S | 6,670,000 |
| Bolivia | U$S | 2,220,000 |
| Paraguay | U$S | 2,220,000 |
| Uruguay | U$S | 2,220,000 |
| | | 20,000,000 |

Article 8    Contributions shall be made by 50% in U.S. Dollars of free convertibility, and by 50% in the currencies of the respective Member Countries, with clauses on adjustment of rates of exchange in respect of the U.S. Dollar.

Article 9    Contributions by Argentina and Brazil shall be made within a period of three years. Contributions by Bolivia, Paraguay, and Uruguay shall be made within a period of ten years. Any contributions shall be made in proportional annual installments.

Article 10    The periods established in the preceding article shall be counted from the effective date this Agreement.

4

ARTICLES OF AGREEMENT

Article 11    The payment of the remaining eighty million U.S. Dollars (US$80,000,000) shall be effected at the time to be established by the Funds' Board of Governors, with the affirmative vote of all its members. (*)

## CHAPTER VI

FINANCING OF WORKS AND STUDIES

Article 12    Financing of works shall be provided for projects that, in addition to being technically and economically feasible, are consistent with the harmonious development and physical integration of the Plata River Basin, in accordance with Article 1 of the Treaty.

Article 13    A harmonious geographical distribution among Member Countries shall be taken into account for the approval of financing of pre-feasibility and feasibility studies, final design, and works, with special consideration for Bolivia, Paraguay, and Uruguay.

--------------------------------

(*)    Resolution A.G.E. II-14/79
"1     Payment of the eighty million U.S. Dollars (US$80,000,000) referred-to in Article 11 of the Articles of Agreement, shall be made as follows:

| COUNTRY | C A P I T A L | | TOTAL |
| --- | --- | --- | --- |
| | CALLABLE | PAYABLE IN CASH | |
| Argentina | 13,334,000 | 13,334,000 | 26,668,000 |
| Bolivia | 4,444,000 | 4,444,000 | 8,888,000 |
| Brazil | 13,334,000 | 13,334,000 | 26,668,000 |
| Paraguay | 4,444,000 | 4,444,000 | 8,888,000 |
| Uruguay | 4,444,000 | 4,444,000 | 8,888,000 |
| TOTAL | 40,000,000 | 40,000,000 | 80,000,000 |

"2     Contributions of Capital Payable in Cash shall be made by 50% in U.S. Dollars of free convertibility and by 50% in the currencies of the respective Member Countries, with maintenance of value with respect to the U.S. Dollar.

3     Contributions by Argentina and Brazil shall be made within a period of 5 years starting from 1980, by means of equal annual installments up to June 15 of each year. Contributions by Bolivia, Paraguay, and Uruguay shall be made in the same manner and periods, starting from 1982.

4     The Payable Capital shall be subject to the Fund's demand, in the case that by its own means, the Fund is not able to perform obligations undertaken with different sources of financing to obtain funds intended to finance loans to Member Countries.

5     Requirements for payment of Payable Capital shall be in proportion to amounts paid-in by each Member Country, as provided for in paragraph 1 above.

6     Upon a request for payment of this nature, the Member Country shall make such payment in convertible currency that the Fund may require to fulfill its obligations.

5

ARTICLES OF AGREEMENT

With said twenty million U.S. Dollars (U$S20,000,000), paid-in on an up-front basis, the financing of pre-feasibility, feasibility and initial design studies shall preferably be taken care of, as provided for in Article 6.

Article 14    For works and studies referred-to in Articles 12 and 13, consulting, engineering, professional, and technical firms of countries in the Plata River Basin shall be given contracting priority.


## CHAPTER VII

## ORGANIZATION AND MANAGEMENT

Article 15    The Fund shall be managed by a Board of Governors and an Executive Board.

Article 16    Both in the Board of Governors as well as in the Executive Board, each Member Country shall be entitled to one vote.

Article 17    Governors, Executive Directors and their Alternate members shall be paid by their respective countries.

---------------------------
"7     The Executive Board shall regulate the present Resolution as regards the Payable Capital.

Resolution A.G. 69/97
"2     To order that from the amount allocated in the "Reserve Account for Future Paid-in Capital Increases", aggregated up to the year 1996, which makes a total equivalent to U$S43,240,254.18 (Forty-three million two hundred and forty thousand two hundred and fifty-four U.S. Dollars and eighteen cents), the amount equivalent to U$S43,000,000,000.00 (Forty-three million U.S. Dollars) be included in the Paid-in Capital of FONPLATA, as per following itemization:

COMPOSITION OF CAPITAL INCREASE
(In U.S. Dollars)

| Countries | Capital Increase by Incorporation of Reserves | Allocation (%) | New Paid-in Capital | Allocation (%) |
|---|---|---|---|---|
| Argentina | 14,334,097.73 | 33.34 | 89,338,096.73 | 33.34 |
| Bolivia | 4,777,268.18 | 11.11 | 29,774,602.18 | 11.11 |
| Brazil | 14,334,097.73 | 33.34 | 89,338,096.73 | 33.34 |
| Paraguay | 4,777,268.18 | 11.11 | 29,774,602.18 | 11.11 |
| Uruguay | 4,777,268.18 | 11.11 | 29,774,602.18 | 11.11 |
| Totals | 43,000,000.00 | 100.00 | 268,000,000.00 | 100.00 |

6

ARTICLES OF AGREEMENT

## TITLE 1

## BOARD OF GOVERNORS

Article 18    The Board of Governors shall be composed of five Governors. Each country shall designate one Regular and one Alternate Governor.

Article 19    All powers of the Fund shall fall upon the Board of Governors, which may delegate them to the Executive Board, with the following exceptions:

    a)    Approve the Fund's Rules and their amendments;

    b)    Approve the Fund's annual budget;

    c)    Decide on the interpretation of the Articles of Agreement of FONPLATA and its Rules, any modification of the amount of its own financial resources and the method of payment.

    d)    Propose to the Governments of Member Countries the amendment to the Fund's Articles of Agreement.

    e)    Hire external auditors who are citizens of Member Countries.

    f)    Review the Audit Report, the Report of the Executive Board, the General Balance Sheet and Statement of Profit & Loss of FONPLATA;

    g)    Decide on participation of other countries or organizations in the increase of financial resources of the Fund;

    h)    Establish the policy for allocation of funds;

    i)    Establish the method for liquidation of the Fund in case of dissolution.

---

Resolution A.G. 69/97
"4    Cause that the Capital of FONPLATA be established according to the allocation per Member Country, detailed below:

### FONPLATA - CAPITAL STRUCTURE
(In U.S. Dollars)

| Countries | Paid-in Capital | Payable Capital | Total Capital | Share (%) |
|---|---|---|---|---|
| Argentina | 89,338,096.73 | 13,334,000.00 | 102,672,096.73 | 33.34 |
| Bolivia | 29,774,602.18 | 4,444,000.00 | 34,218,602.18 | 11.11 |
| Brazil | 89,338,095.73 | 13,334,000.00 | 102,672,096.73 | 33.34 |
| Paraguay | 29,774,602.18 | 4,444,000.00 | 34,218,602.18 | 11.11 |
| Uruguay | 29,774,602.18 | 4,444,000.00 | 34,218,602.18 | 11.11 |
| Totals | 268,000,000.00 | | 308,000,000.00 | 100.00 |

7

ARTICLES OF AGREEMENT

Article 20    Decisions in relation to subparagraphs a), c), d), g), h), and i) of the preceding article shall be made unanimously. In other cases, the Board of Governors may, by unanimous decision, adopt a different voting system.

Article 21    The Board of Governors shall meet, regularly, once a year, on the date and at the place where the annual regular meeting of Secretaries of State of Countries of the Plata River Basin.

Article 22    The Board of Governors, when convened, shall designate a Chairman from among is regular members, who shall hold officer until the next regular meeting. The change of Chairman shall be on a rotation basis by following the alphabetical order of countries.

Article 23    In case of impediment of the current Chairman, the Regular Governor of the country following in alphabetical order shall replace him as Acting Chairman.

Article 24    The Board of Governors may hold special meetings at the place and date to be established by the Executive Board.

TITLE II

THE EXECUTIVE BOARD

Article 25    The Executive Board shall be composed of five Members. Each country shall designate a Regular Director and may designate an Alternate Director.

Article 26    The Chair of the Executive Board shall be held by annual terms, following the alphabetical order of countries.

Article 27    In case of impediment of the current Chairman, the Regular Director of the country following in alphabetical order shall replace him as Acting Chairman.

Article 28    The Board shall be in charge of managing the operations of the Fund, and for such purpose, it shall exercise any powers inherent to the Board and those that may be delegated to it by the Board of Governors.

Article 29    The powers of the Executive Board are:

8

ARTICLES OF AGREEMENT

a) To carry out and enforce decisions of the Board of Governors;

b) To address and decide on the granting of loans, guarantees, and endorsements, within the guidelines of the policy on allocation of funds established by the Board of Governors;

c) To submit the Fund's annual budget for consideration by the Board of Governors;

d) To submit, on a yearly basis, the Report, Balance Sheet and Statement of Profit & Loss for consideration by the Board of Governors;

e) To call special meetings of the Board of Governors with the vote of at least three of its members;

f) To propose reforms to the Fund's Rules before the Board of Governors;

g) To hire technical and administrative personnel.

Article 30    The Executive Board shall meet as often as required by the operations of FONPLATA.

Article 31    Any decisions of the Executive Board shall conform to the voting system established by the Rules and the Board of Governors.


### CHAPTER VIII

FINANCIAL YEAR, BALANCE SHEET, AND PROFITS

Article 32    The financial year of the Fund shall be in annual periods, and its starting date shall be established by the Executive Board.

Article 33    The Annual Balance Sheet and the Statement of Profit & Loss shall be prepared at the end of the financial year.

Article 34    The Fund shall hire the services of External Auditors, citizens of Member Countries, who are to issue an opinion on the Balance Sheet and Statement of Profit & Loss.

9

ARTICLES OF AGREEMENT

Article 35    Any profits obtained by the Fund from its operations shall be added to the Fund's financial resources.

## CHAPTER IX

### TERM AND DISSOLUTION

Article 36    The Fund shall have an unlimited duration.

Article 37    Notwithstanding the provisions of the preceding article, the Fund may be dissolved by unanimous decision of Member Countries. In case of withdrawal of two or more Member Countries, the dissolution shall take place as a matter of law.

Article 38    Any Member Country may withdraw from the Fund by means of written notice submitted to the Executive Board. The withdrawal shall take place upon completion of a period of one year after having submitted such notice. Even after withdrawing, said country shall continue to be liable for all obligations it may have in respect of the Fund as of the date of delivery of the notice of withdrawal. The refunding of any contributions shall be made once all debts with the Fund have been settled.

Article 39    In case a signatory country is no longer a member of the Fund, that country shall have no liability in respect of any loans, guarantees, or endorsements made after delivery of the notice of withdrawal.

The rights and obligations of a country that is no longer a Member shall be established according to the Special Settlement Balance Sheet prepared as of the date the country notified its intention to withdraw.

## CHAPTER X

### IMMUNITIES, EXEMPTIONS, AND PRIVILEGES

Article 40    The property and other assets of the Fund, as well as any operations carried out by the Fund in any of the Member Countries where they may be located, shall enjoy the same immunities, exemptions, and privileges as those agreed upon between the Intergovernmental Coordination Committee of Countries of the Plata River Basin and its Member Countries.

10

ARTICLES OF AGREEMENT

Article 41    The Governors and Directors, its Alternate members, and the technical and administrative employees of the Fund, who are not citizens of the country where they perform their duties, shall enjoy in said countries the same immunities, exemptions, and privileges as regards themselves and their assets as those granted to employees of the Intergovernmental Coordination Committee of Countries of the Plata River Basin.

## CHAPTER XI

### FINAL PROVISIONS

Article 42    This Agreement shall become effective thirty days after the ratification instruments from all contracting countries have been deposited.

The ratification instruments shall be deposited at the Headquarters of the Intergovernmental Coordination Committee of Countries of the Plata River Basin.

Article 43    The signing and ratification of this Agreement may not be the object of reservations.

Article 44    Thirty days after the effective date of this Agreement, the Member Countries shall advise the Secretariat of the Intergovernmental Coordination Committee of Countries of the Plata River Basin the names of individuals designated as Governors and Executive Directors.

Article 45    Within thirty days after the Governors and Executive Directors of Member Countries have been accredited, the Intergovernmental Coordination Committee of Countries of the Plata River Basin shall call the first meeting of the Executive Board for the purpose of preparing the Rules and Budget of the Fund, and shall prepare projects pertaining to the Board of Governors within a period of sixty days.

Article 46    The permanent headquarters of the Fund shall be established by the Intergovernmental Coordination Committee of Countries of the Plata River Basin.

On behalf of the Government of the
Republic of Bolivia
ALBERTO GUZMAN SORIANO
MINISTER OF FOREIGN AFFAIRS

On behalf of the Government of the
Federative Republic of Brazil
ANTONIO F. AZEREDO DA SILVEIRA
MINISTER OF FOREIGN AFFAIRS

11

ARTICLES OF AGREEMENT

On behalf of the Government of
The Republic of Paraguay
RAUL SAPENA PASTOR
MINISTER OF FOREIGN AFFAIRS

On behalf of the Government of the
Oriental Republic of Uruguay
JUAN CARLOS BLANCO
MINISTER OF FOREIGN AFFAIRS

On behalf of the Government of
the Republic of Argentina
ALBERTO JUAN VIGNES
MINISTER OF FOREIGN AFFAIRS

DEPOSIT OF THE RATIFICATION INSTRUMENTS

| | |
|---|---|
| Federative Republic of Brazil | December 20, 1974 |
| Republic of Paraguay | April 3, 1975 |
| Republic of Bolivia | May 16, 1975 |
| Republic of Uruguay | May 23, 1975 |
| Republic of Argentina | September 14, 1976 |

| | |
|---|---|
| EFFECTIVE DATE | October 14, 1976 |

the undersigned, FRANK M. SAMSON-HOLLAND,
an Official Translator, registered with the Supreme
Court of Justice under N° 26, do hereby certify,
that the foregoing is a true and accurate English
translation of a document in Spanish, attached
hereto.— IN WITNESS WHEREOF, I have here
unto set my hand and affixed my seal, in Asuncion,
Paraguay, this 20th day of June, A.D 2005.

12

**EXHIBIT 3**

# CUENCA DEL PLATA
## IX REUNION DE CANCILLERES
### 5 al 9 de Diciembre de 1977

Asunción - Paraguay

R E S O L U C I O N   Nº 116 (IX)

LA IX REUNION DE CANCILLERES DE LOS PAISES DE LA CUENCA DEL PLATA,

CONSIDERANDO: que es necesario convenir disposiciones relativas a las inmunidades, privilegios y franquicias de que debe gozar el Fondo Financiero para el ejercicio de sus funciones;

TENIENDO EN CUENTA: lo establecido en los Arts. 1º y 3º del Convenio Constitutivo, que otorga al Fondo personalidad jurídica y capacidad de financiamiento;

ATENTA: a las disposiciones del Capítulo X del mismo Convenio que establece el otorgamiento de inmunidades, exenciones y privilegios diplomáticos necesarios para el ejercicio de sus funciones a los Administradores del Fondo, sus Funcionarios y Asesores que prestan sericios en forma permanente o temporal, así como a su Patrimonio y bienes.

RESUELVE:

Aprobar el siguiente ACUERDO SOBRE INMUNIDADES, EXENCIONES Y PRIVILEGIOS DEL FONDO FINANCIERO PARA EL DESARROLLO DE LA CUENCA DEL PLATA EN EL TERRITORIO DE LOS PAISES MIEMBROS.

### CAPITULO I
### Definiciones
### Artículo I

A los efectos de este Acuerdo:

a - la expresión "Fondo" significa el Fondo Financiero para el Desarrollo de la Cuenca del Plata.

b - la expresión "Países Miembros" significa los Países Miembros del Tratado de la Cuenca del Plata.

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Crísenboni Celi
SECRETARIO PRINCIPAL
FONPLATA

CUENCA DEL PLATA

IX REUNION DE CANCILLERES

5 al 9 de Diciembre de 1977

Asunción - Paraguay

c - las expresiones "Gobierno" y "Gobiernos" significan, respectiva-
mente, el Gobierno y los Gobiernos de los Países Miembros.

d - la expresión "Autoridades Competentes" significa las autoridades
de los Países Miembros, de conformidad a las Leyes de los mismos.

e - la expresión "Bienes" comprende los inmuebles, muebles, derechos,
fondos en cualquier moneda, oro, divisas, haberes, ingresos, pu-
blicaciones y todo aquello que constituye el patrimonio del Fondo.

f - la expresión "Administradores del Fondo" significa los Gobernado-
res y Directores Ejecutivos a que se refiere el Capítulo VII del
Convenio Constitutivo del Fondo y sus asesores.

g - la expresión "Funcionarios del Fondo" significa el Secretario Eje-
cutivo, los miembros del personal técnico administrativo y los
asesores contratados del Fondo.

h - la expresión "Funcionarios de los organismos internacionales ase-
sores" significa los representantes de los organismos internacio-
nales que presten asesoramiento técnico al Fondo.

i - la expresión "Sede del Fondo" significa los locales ocupados por
el Fondo.

j - la expresión "Secretaría Ejecutiva" significa el órgano operativo
del Fondo.

k - la expresión "archivos del Fondo" comprende: correspondencia,
manuscritos, fotografías, películas cinematográficas, grabaciones
sonoras y todos los documentos de cualquier naturaleza de propie-
dad del Fondo que tenga en su poder.

CAPITULO II

El Fondo

Artículo 2

El Fondo y sus bienes, en cualquier lugar en que se encuentren y quien
quiera los tenga en su poder, gozan de inmunidad de jurisdicción salvo
en la medida en que el Fondo, en algún caso particular, haya renuncia-
do expresamente a ella. Sin embargo, la renuncia de inmunidad no puede

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Gramembold Bello
SECRETARIO PRINCIPAL
FONPLATA

CUENCA DEL PLATA
IX REUNION DE CANCILLERES
5 al 9 de Diciembre de 1977

Asunción - Paraguay

extenderse a forma alguna de ejecución.

El Fondo a través del Directorio Ejecutivo tomará las medidas adecuadas para la solución de litigios derivados de contratos u otros actos de derecho privado en los que sea parte.

### Artículo 3

La sede del Fondo es inviolable. Los bienes del Fondo, en cualquier lugar en que se encuentren y quienquiera los tenga en su poder, están exentos de registro, requisición, confiscación, expropiación y de toda otra forma de intervención, sea por vía de acción ejecutiva, administrativa, judicial o legislativa.

### Artículo 4

Los archivos del Fondo son inviolables en cualquier lugar en que se encuentren.

### Artículo 5

El Fondo puede tener en su poder recursos en cualquier moneda, y divisas corrientes, así como títulos, acciones, valores y bonos y transferirlos libremente de un país a otro y de un lugar a otro en el territorio de cualquier país y convertirlos en otras monedas.

En el ejercicio de los derechos que le son otorgados en virtud de este Artículo, el Fondo no podrá ser sometido a fiscalizaciones, reglamentos, moratorias y otras medidas similares por parte de los Gobiernos. No obstante, el Fondo prestará debida atención a toda petición que formule el Gobierno de un País miembro, en la medida en que estime posible atenderla sin detrimento de sus propios intereses.

### Artículo 6

El Fondo y sus bienes están Exentos en el territorio de los Países miembros:

a) de todo impuesto directo; y

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cronembold Belk
SECRETARIO PRINCIPAL
FONPLATA

CUENCA DEL PLATA
IX REUNION DE CANCILLERES
5 al 9 de Diciembre de 1977

Asunción - Paraguay
5.

b) de derechos de aduana, prohibiciones y restricciones a la importación y exportación, respecto a los artículos importados o exportados por el Fondo para su uso oficial. Los artículos importados bajo estas exenciones no serán vendidos en el país en que hayan sido introducidos, sino conforme a las condiciones establecidas por el Gobierno respectivo.

El Fondo en principio, no reclamará la exención de impuestos al consumo, a la venta y de otros indirectos. Sin embargo los Países Miembros adoptarán siempre que les sea posible las disposiciones administrativas pertinentes para la exención o reembolso de la cantidad correspondiente a tales impuestos cuando el Fondo efectúe, para su uso oficial, compras importantes en cuyo precio esté incorporado el impuesto.

El Fondo no reclamará exención alguna de tarifas y tasas que constituyan una remuneración por servicios de utilidad pública.

### Artículo 7

El Fondo goza en el territorio de cada uno de los Países Miembros, para sus comunicaciones oficiales, de facilidades no menos favorables que aquellas otorgadas por el Gobierno a cualquier otro organismo internacional en materia de prioridades, contribuciones, tarifas e impuestos sobre correspondencia, cables, telegramas, radiogramas, telefotos, teléfonos y otras comunicaciones, así como de tarifas de prensa y radio.

Ninguna censura será aplicada a la correspondencia y otras comunicaciones oficiales del Fondo.

El Fondo tiene derecho a usar claves y a despachar y recibir su correspondencia ya sea por correos y valijas, los cuales gozan de las mismas inmunidades y privilegios que los concedidos a correos y valijas diplomáticas.

Las disposiciones de este artículo no pueden ser interpretadas como prohibitivas para la adopción de medidas apropiadas de seguridad que se determinarán mediante acuerdo entre un País Miembro y el Fondo.

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cruzenbold Brito
SECRETARIO PRINCIPAL
FONPLATA

CUENCA DEL PLATA
IX REUNION DE CANCILLERES
5 al 9 de Diciembre de 1977

Asunción - Paraguay

### Artículo 8

Los privilegios, inmunidades y franquicias a que se refiere este Capítulo son conceptos exclusivamente para el cumplimiento de las finalidades propias del Fondo.

### CAPITULO III

### Administradores del Fondo

### Artículo 9

Los Administradores del Fondo, mientras ejerzan sus funciones y durante el viaje de ida a los lugares donde desempeñarán su misión, así como durante su regreso, gozan de los privilegios e inmunidades siguientes:

a)  Inmunidad de jurisdicción, respecto de los actos ejecutados y de las expresiones emitidas en el desempeño de sus funciones, sean éstas orales o escritas, contra detención o arresto personal, contra embargo de su equipaje personal y contra todo procedimiento judicial;

b)  Derecho de usar claves y recibir y expedir documentos y correspondencia por mensajeros o en valijas selladas;

c)  Exención de las restricciones de inmigración y registro de extranjeros y de todo servicio de carácter nacional;

d)  Iguales inmunidades y franquicias que las acordadas a los envíados diplomáticos, respecto de sus equipajes personales y de los útiles y materiales de trabajo destinados al uso oficial; y

e)  Aquellos otros privilegios, inmunidades y facilidades de que gozan los enviados diplomáticos, excepto en lo que se refiere a exención de impuestos de venta y al consumo o de derechos de aduana sobre mercaderías importadas que no sean las señaladas en el inciso precedente.

Las inmunidades contra detención o arresto personal, contra embargo de equipaje personal y las exenciones de las restricciones de inmigración y registro de extranjeros y de todo servicio nacional, se extienden al cónyuge, hijas solteras e hijos menores de edad.

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cruzapala Bello
SECRETARIO PRINCIPAL
FONPLATA

CUENCA DEL PLATA
*IX REUNION DE CANCILLERES*
5 al 9 de Diciembre de 1977

Asunción - Paraguay

### Artículo 10

La inmunidad de jurisdicción por los actos y expresiones a que se refiere el inciso a) del artículo 9, continuará después que los Administradores del Fondo hayan cesado en el ejercicio de su misión.

### Artículo 11

Los privilegios e inmunidades son otorgados a los Administradores del Fondo en salvaguardia de su independencia en el ejercicio de sus funciones en relación con el mismo. Por consiguiente, cada País miembro debe renunciar a los privilegios e inmunidades conferidos a uno o más Administradores en los casos en que el goce de los mismos, según su propio criterio, entorpezca el curso de la justicia y siempre que esa renuncia no perjudique los fines para los cuales fueron otorgados.

### Artículo 12

Las disposiciones de los artículos 9 y 10 no obligan a ningún País miembro a conceder cualesquiera de los privilegios e inmunidades referidos en ellos a ninguno de sus nacionales, ni a cualquier persona que lo represente en el Fondo.

### CAPITULO IV

### FUNCIONARIOS DEL FONDO

### Artículo 13

El Secretario Ejecutivo o quien ejerza sus funciones y los altos funcionarios del Fondo, que sean calificados como tales por el Directorio Ejecutivo, gozan de las mismas inmunidades y privilegios señalados en el artículo 9, en las condiciones establecidas en el artículo 10.

### Artículo 14

Los demás funcionarios del Fondo gozan de las inmunidades y privilegios

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Ochterbold Beltu
SECRETARIO PRINCIPAL
FONPLATA

## CUENCA DEL PLATA
### IX REUNION DE CANCILLERES
5 al 9 de Diciembre de 1977

Asunción - Paraguay

señalados en los incisos a), b), c) y d) del artículo 9.

Además, están exentos en los Países miembros de cualquier clase de impuestos sobre los sueldos y emolumentos que perciben del Fondo y gozan de iguales franquicias que las acordadas a los representantes de Gobiernos extranjeros en misión oficial, en lo referente a regulaciones sobre divisas extranjeras.

### Artículo 15

Los Funcionarios del Fondo que por su misión o contrato deban residir en un País miembro por un período superior a un año, tendrán la facultad de importar sus muebles y efectos de uso personal para su primera instalación libre de derechos y otros gravámenes de acuerdo con las leyes y reglamentos pertinentes del respectivo país.

### Artículo 16

Los privilegios e inmunidades se otorgan a los funcionarios del Fondo exclusivamente en interés de éste. Por consiguiente, el Directorio Ejecutivo debe renunciar a tales privilegios e inmunidades en los casos en que, a juicio de dicho Directorio, el ejercicio de ellos entorpezca el curso de la justicia y siempre que esa renuncia no perjudique los intereses del Fondo.

El Directorio Ejecutivo tomará las medidas adecuadas para la solución de los litigios en que esté implicado un funcionario del Fondo, que por razón de su cargo goza de inmunidad.

### Artículo 17

Las disposiciones de los artículos 13 y 14 no obligan a los Gobiernos a conceder a sus nacionales que sean funcionarios del Fondo, los privilegios e inmunidades referidos en ellos, salvo en los siguientes casos:

a) inmunidad respecto a proceso judicial relativo a palabras orales o escritas y a todos los actos ejecutados en el desempeño de sus funciones;

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Clementoli-Brito
SECRETARIO PRINCIPAL
FONPLATA

# CUENCA DEL PLATA
## IX REUNION DE CANCILLERES
### 5 al 9 de Diciembre de 1977

Asunción - Paraguay

b) inviolabilidad de sus papeles y documentos relacionados con el Fondo;

c) exención de impuestos sobre salarios y emolumentos percibidos del Fondo.

## CAPITULO V

### Funcionarios de los Organismos Internacionales Asesores

### Artículo 18

Los funcionarios de los organismos internacionales asesores, mientras se hallen en cumplimiento de funciones relacionadas con el Fondo, gozan de igual tratamiento que el establecido en los artículos 14 y 15.

### Artículo 19

La sede y los archivos de las Representaciones de los organismos internacionales asesores, son inviolables.

## CAPITULO VI

### Disposiciones Generales

### Artículo 20

El Fondo otorgará a sus funcionarios y a los funcionarios de los organismos internacionales asesores, un documento que acredite su calidad y especifique la naturaleza de su misión.

Este documento será suficiente para que su titular goce en el territorio de los Países miembros de los privilegios e inmunidades que otorga este Acuerdo.

### Artículo 21

Si cualquier País miembro considera que ha habido abuso de un privi-

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Grottenbald Beth
SECRETARIO PRINCIPAL
FONPLATA

# CUENCA DEL PLATA
## IX REUNION DE CANCILLERES
### 5 al 9 de Diciembre de 1977

Asunción - Paraguay

legio o inmunidad concedido por este Acuerdo, realizará consultas con el Estado que corresponda o con el Fondo, según proceda, a fin de determinar si dicho abuso ha ocurrido y en ese caso, evitar su repetición. No obstante, un País miembro que considere que cualquier persona ha abusado de algún privilegio o inmunidad que le ha sido conferido por este Acuerdo, puede requerirle que abandone su territorio.

### Artículo 22

Toda divergencia en la interpretación o aplicación de este Acuerdo se someterá al procedimiento de solución que de común acuerdo establezcan las Partes interesadas.

### Artículo 23

Este Acuerdo entrará en vigor, para cada uno de los Países Miembros, desde la fecha en que se deposite el respectivo instrumento de adhesión en la Secretaría Ejecutiva, la que comunicará a los mismos la fecha del depósito de cada instrumento de adhesión.

### Artículo 24

Este Acuerdo permanecerá en vigor para cada País Miembro mientras forme parte del Fondo.

### Artículo 25

La Asamblea de Gobernadores queda facultada a proponer a los Países Miembros acuerdos adicionales o modificaciones al presente instrumento.

ES COPIA FIEL DEL ORIGINAL

Dr. Ricardo Cranenbrook Bello
SECRETARIO PRINCIPAL
FONPLATA



## AGREEMENT ON IMMUNITIES, EXEMPTIONS, AND PRIVILEGES OF THE
## FINANCIAL FUND FOR DEVELOPMENT OF THE PLATA RIVER BASIN
## IN THE TERRITORY OF MEMBER COUNTRIES

CONSIDERING the need to agree on provisions pertaining to immunities, privileges, and exemptions that the Financial Fund must enjoy to perform its duties;

TAKING INTO ACCOUNT the provisions of Articles 1 and 3 of the Articles of Agreement, which confer the Fund legal and financial capacity;

IN VIEW OF the provisions of Chapter X of the same Agreement, which establish the granting of diplomatic immunities, exemptions, and privileges necessary to perform their duties, to Administrators of the Fund, its employees and advisers rendering services on a temporary or permanent basis, as well as the Fund's equity and assets.

RESOLVES

To approve the following AGREEMENT ON IMMUNITIES, EXEMPTIONS, AND PRIVILEGES OF THE FINANCIAL FUND FOR DEVELOPMENT OF THE PLATA RIVER BASIN IN THE TERRITORY OF MEMBER COUNTRIES.

1

AGREEMENT ON IMMUNITIES

# CHAPTER I
## DEFINITIONS
### Article 1

For the purposes of this Agreement:

a)   The term "Fund" means the Financial Fund for Development of the Plata River Basin.

b)   The term "Member Countries" means the Member Countries of the Plata River Basin Treaty.

c)   The terms "Government" and "Governments" mean, respectively, the Government and the Governments of Member Countries.

d)   The term "Competent Authorities" means the authorities of Member Countries, in accordance with their Laws.

e)   The term "Assets" includes land and buildings, furniture, rights, funds in any currency, gold, foreign exchange, income, publications, and anything that is part of the Fund's patrimony.

f)   The term "Administrators of the Fund" means the Governors and Executive Directors as mentioned in Chapter VII of the Articles of Agreement of the Fund and the advisers thereof.

g)   The term "Employees of the Fund" means the Executive Secretary, members of the technical and administrative staff and hired advisers of the Fund.

h)   The term "Employees of international consulting agencies" means the representatives of international agencies providing technical advice to the Fund.

i)   The term "Fund's Headquarters" means the premises occupied by the Fund.

j)   The term "Executive Secretariat" means the executive body of the Fund.

k)   The term "Fund's Archives" includes: correspondence, manuscripts, photographs, cinematographic films, sound recordings, and all documents of any nature owned and kept by the Fund.



## CHAPTER II

### THE FUND

### Article 2

The Fund and its assets, anywhere they may be located and whoever may be keeping them, enjoy immunity from jurisdiction, except to the extent to which the Fund, in any particular case, has specifically waived such immunity. However, the waiver of immunity may not be extended to any form of execution.

The Fund, through of its Executive Board, shall adopt any appropriate measures for the settlement of litigations arising from contracts or other actions of private law of which it is a part.

### Article 3

The Fund's Headquarters are inviolable. Any assets of the Fund, wherever they may be located and whoever may be keeping them, are exempted from registration, seizure, confiscation, expropriation, and any other form of intervention, whether by means of executive, administrative, judicial or legislative action.

### Article 4

The Fund's archives are inviolable anywhere they may be located

### Article 5

The Fund may keep financial resources in any currency, and common foreign exchange, as well as securities, shares, and bonds transferred freely from one country to another and from one place to another within the territory of any country, and convert them into other currencies,

In exercising the rights, given by virtue of this Article, the Fund may not be subjected to supervisions, regulations, suspension of payments, and other similar measures on the part of Governments. Nonetheless, the Fund shall pay special attention to any request made by the Government of a Member Country, inasmuch as it deems possible to address such request without prejudice to its own interests.

### Article 6

The Fund and its assets shall be exempted within the territory of Member Countries:

3

AGREEMENT ON IMMUNITIES ...

a)   From any direct taxes, and

b)   Customs duties, prohibitions, and restrictions on imports and exports, in respect of items imported or exported by the Fund for official use. Any goods imported or exported under these exemptions shall not be sold within the country where they have been introduced, but only according to the conditions established by the respective Government.

The Fund shall not, in principle, claim exemptions from excise, sales, and other indirect taxes. However, the Member Countries shall adopt, whenever possible, any pertinent administrative provisions for the exemption or refund of any amount corresponding to such taxes where the Fund makes, for its official use, significant purchases whose prices includes the tax.

The Fund shall not claim any exemption from tariffs and rates that constitute remuneration for services of public use.

Article 7

The Fund enjoys in the territory of each of the Member Countries, for its official communications, facilities not less favorable than those granted by the Government to any other international organization as regards priorities, contributions, tariffs, and taxes on mail, cablegrams, telegrams, radiograms, telephoto, telephones, and other communications, as well as newspaper and radio rates.

No censure shall be applied to mail and other official communications of the Fund.

The Fund is entitled to use codes and to dispatch and receive its mail by means of postal services and bags, which enjoy the same immunities and privileges as those granted to diplomatic mail and bags.

The provisions of this article may not be interpreted as prohibitive for the adoption of appropriate security measures which may be established by agreement between a Member Country and the Fund.

Article 8

The privileges, immunities, and exemptions referred-to in this Chapter are concepts solely for the fulfillment of purposes inherent to the Fund.

4

AGREEMENT ON IMMUNITIES, ... 

## CHAPTER III

## ADMINISTRATORS OF THE FUND

### Article 9

The Fund's Administrators, while in the performance of their duties and while traveling to the places where they are to carry out their mission, as well as upon their return, shall enjoy the following privileges and immunities:

a)  Immunity from jurisdiction in respect of any acts executed and any statements made while in the performance of their duties, whether verbal or written, against personal detention or arrest, against confiscation of their personal luggage and against any judicial proceeding;

b)  Right to use codes and to issue documents and mail by means of messengers or sealed bags;

c)  Exemption from restrictions on immigration and registration of aliens, and from any service of a national nature;

d)  The same immunities and exemptions as those granted upon diplomatic envoys in respect of their personal luggage, office supplies and work materials intended for official use, and

e)  Any other privileges, immunities, and facilities enjoyed by diplomatic envoys, except as regards exemptions from sales and excise taxes or customs duties for imported goods other than those specified in the preceding subparagraph.

The immunities against personal detention or arrest, confiscation of personal luggage and the exemptions from restrictions on immigration and registration of aliens and any national service are extended to the spouse, unmarried daughters, and minor children.

### Article 10

The immunity from jurisdiction for actions and statements referred-to in subparagraph a) of Article 9 shall continue after the Administrators of the Fund have ceased to perform their mission.

5

AGREEMENT ON IMMUNITIES, ...



### Article 11

Privileges and immunities are granted upon Administrators of the Fund in safeguarding their independence in the performance of their duties. Therefore, each Member Country shall waive the privileges and immunities conferred to one or more Administrators in the cases where the enjoyment of such privileges and immunities, in their opinion, obstructs the operation of justice, and provided that such waiver will not impair the purposes for which they were granted.

### Article 12

The provisions of Article 9 and 10 do not require any Member Country to grant any of the privileges and immunities referred-to therein to any of their citizens nor to any person representing such Member Country in the Fund.

### CHAPTER IV

### EMPLOYEES OF THE FUND

### Article 13

The Executive Secretary, or whoever may be performing his duties, and the high-ranking officers of the Fund, who are qualified as such by the Executive Board, enjoy the same immunities and privileges mentioned in Article 9, under the terms established in Article 10.

### Article 14

All other /officers/employees of the Fund enjoy the immunities and privileges mentioned in subparagraphs a), b), c), and d) of Article 9.

In addition, in the Member Countries, they shall be exempted from any kind of taxes on salaries and fees they may receive from the Fund, and they enjoy the same exemptions as those granted to representatives of foreign Governments on official mission, as regards regulations on foreign currencies.

### Article 15

The officers/employees of the Fund, who on account of their mission or contracts, must reside in a Member Country for a period exceeding one year, shall be entitled to import their furniture and personal property for their first installation, free of duty and other liens in accordance with the applicable laws and regulations of the respective country.

6

AGREEMENT ON IMMUNITIES ...

### Article 16

Privileges and immunities are granted to employees of the Fund solely in the interest of the Fund. Therefore, the Executive Board shall waive such privileges and immunities in cases where, in the opinion of the Board, their operation will the course of justice, and provided that such waiver does not impair the interests of the Fund.

The Executive Board shall take any appropriate measures to settle litigations that involve an employee of the Fund, who, on account of his/her position enjoys immunity.

### Article 17

The provisions of Articles 13 and 14 do not require Governments to grant to their citizens who are employees of the Fund, the privileges and immunities referred-to therein, except in the following cases:

a) Immunity in respect of a judicial process in relation to verbal or written statements and, to any acts executed in the performance of their duties;

b) Inviolability of their papers and documents in relation to the Fund;

c) Exemption from taxes on salaries and fees received from the Fund;

### CHAPTER V

### EMPLOYEES OF INTERNATIONAL CONSULTING AGENCIES

### Article 18

The employees of international consulting agencies, while in the performance of duties related to the Fund, shall enjoy the same treatment as that established in Articles 14 and 15.

### Article 19

The headquarters and the archives of representations of international consulting agencies are inviolable.

7

AGREEMENT ON IMMUNITIES, ...

## CHAPTER VI

## GENERAL PROVISIONS

### Article 20

The Fund shall issue to its employees and the employees of international consulting agencies a document attesting their capacity and specifying the nature of their mission.

This document shall be sufficient for the holder to enjoy the privileges and immunities, within the territories of Member Countries, granted by this Agreement.

### Article 21

If any Member Country believes that there has been an abuse of a privilege or immunity granted by this Agreement, it shall conduct inquiries with the relevant State or with the Fund, as appropriate, in order to determine whether such abuse has taken place and, in such case, prevent it from being repeated.

Nonetheless, a Member Country that believes that any person has abused any privilege or immunity granted by this Agreement, may require such person to leave its territory.

### Article 22

Any discrepancy in the interpretation or application of this Agreement shall be subject to the procedure for settlement that, by mutual agreement, may be established by the interested parties.

### Article 23

This Agreement shall become effective, for each of the Member Countries, from the date the respective adherence instrument is deposited with the Executive Secretariat, which shall advise the date of deposit of each instrument of adherence to each country.

### Article 24

This Agreement shall remain in effect for each Member Country as long as it is a part of the Fund.

### Article 25

The Board of Governors is empowered to propose to the Member Countries additional agreements or amendments to the present instrument.

the undersigned, FRANK M. SAMSON-HOLLAND, an Official Translator, registered with the Supreme Court of Justice under N° 26, do hereby certify, that the foregoing is a true and accurate English translation of a document in Spanish, attached hereto.- IN WITNESS WHEREOF, I have here unto set my hand and affixed my seal, in Asunción, Paraguay, this 20th day of June, A.D. 2002.

**EXHIBIT 4**

At the Ex-Parte Motion Office at the Supreme Court of the State of New York, held in and for the County of New York, at the County Court House, on the ____ 20 ____ day of _____ 19 _2007_

Present:

**SHERRY KLEIN HEITLER**
Justice

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------x

OSCAR DAVID CORTEZ UZEDA,

                             Plaintiff,

          -against-

FONDO FINANCIERO PARA EL DESARROLLO
DE LA CUENCA DEL PLATA
A/K/A FONPLATA,

                           Defendant.
------------------------------------------------------------x

Index No. 07/119074

**ORDER OF
ATTACHMENT**

FILED

AUG 24 2007

COUNTY CLERK'S OFFICE
NEW YORK

      WHEREAS an application has been made to the undersigned by plaintiff Oscar David Cortez Uzeda for an Order of Attachment against the property of defendant Fondo Financiero Para el Desarrollo de la Cuenca del Plata a/k/a/ FONPLATA in an action in the Supreme Court,

      NOW upon reading and filing the affidavit of the affirmation of V. David Rivkin, Esq., dated August 14, 2007, the affidavit of Oscar David Cortez Uzeda, sworn to July 17, 2007 and exhibits thereto, and the accompanying memorandum of law, and it satisfactorily appearing to the Court that one or more of the grounds for attachment set down in CPLR 6201 exists in favor of plaintiff and against defendant to recover a sum of money in the amount of $360,288.00 #315,691.44 based on a foreign judgment in Bolivia, it is therefore,

      On motion of Fox Horan & Camerini LLP, attorneys for plaintiff,

      ORDERED that an Order of Attachment be granted, and it is further

ORDERED that plaintiff's undertaking be and the same hereby is fixed in the sum of $36,028.00 of which amount the sum of $18,014.00 thereof is conditioned that plaintiff will pay to defendant all costs and damages, including reasonable attorney's fees, which may be sustained by reason of the attachment if defendant recovers judgment or it is finally determined that plaintiff was not entitled to an attachment of defendant's property, and the balance thereof is conditioned that plaintiff will pay to the Sheriff all of his or her allowable fees, and it further

ORDERED that the amount to be secured by this order of attachment, including any interest, costs, and sheriff's fees and expenses shall be $360,288.00, and it is further

ORDERED that the Sheriff of the City of New York or of any county in the State of New York, attach property of defendant, within his or her jurisdiction, at any time before final judgment by levy upon such properties, including, but not limited to, defendant's bank accounts at: (a) Banco do Brasil, 600 Fifth Avenue 3rd Floor – Rockefeller Center, New York, New York 10020; (b) Lloyd's America Inc., The Museum Office Building, 25 West 53rd Street 14th Floor, New York, New York 10019; (c) Dresdner Bank AG, 1301 Avenue of the Americas, New York, New York 10019; (d) UBS AG, 1285 Avenue of the Americas, New York, New York 10019; (e) Citigroup d/b/a Citibank, N.A., 399 Park Avenue, New York, New York 10043; and (f) Banco Santander Central Hispano S.A., 45 E. 53rd Street, New York, NY 10022, as will satisfy the aforesaid sum of $315,691.44. $360,288.00 The Sheriff shall refrain from taking any property levied upon into his or her actually custody pending further order of this court, and it is further

ORDERED that the garnishees' statements required by CPLR 6219 be served, upon the Sherriff within 5 days after levy and that a copy of the garnishees' statements be served upon plaintiff, and it is further

2

ORDERED that the plaintiff shall move within ten days after levy on such notice as the

Court shall direct to the defendant, garnishees, if any, and the Sheriff for an order confirming the

order of attachment.

Enter Within Ten Days:

_____

J.S.C.

SHERRY KLEIN HEITLER

FILED

AUG 2 4 2007

COUNTY CLERK'S OFFICE
NEW YORK

**EXHIBIT 5**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

12980 OSCAR DAVID CORTEZ UZEDA,

021330

              Plaintiff,

      -against-

FONDO FINANCIERO PARA EL DESARROLLO
DE LA CUENCA DEL PLATA
A/K/A FONPLATA,

              Defendant.

---------------------------------------x

HON. ROLANDO T. ACOSTA

Index No. 07/119074  110974/07

ORDER TO SHOW CAUSE

EX PARTE MOTION OFFICE

APPROVED
FOR THE PAYMENT
OF MOTION FEE
ONLY

Upon the affirmation of Eric Lindquist, dated August 29, 2007, and the exhibits attached thereto,

Let the defendant herein show cause before this Court at ~~the Submission Part, Room 130~~, *Part 61* of the Supreme Court Courthouse, ~~60 Centre Street~~, *71 Thomas Street, Room 210* New York, New York, on *Sept. 13,* ~~2007~~ at 9:30 am, or as soon thereafter as counsel can be heard, why an order should not be made, pursuant to CPLR 6211, confirming the order of attachment granted herein on August 20, 2007, and granting such other relief as this court shall deem just and proper.

Sufficient cause appearing therefor, let service of a copy of this order to show cause together with the papers upon which it is granted, *with the exception of the summons* on the defendant Fondo Financiero Para el Desarrollo de la Cuenca del Plata, Avenida Irala 573, Santa Cruz de la Sierra, Bolivia, by *overnight mail* ~~certified air mail or by Federal Express~~, on or before *Sept 4* , 2007 be deemed good and sufficient service thereof, except as to the summons.

Let service of a copy of this order to show cause together with the papers upon which it is granted, on the Sheriff of the County of New York and on the garnishee, Banco do Brasil, 600

Fifth Avenue 3rd Floor – Rockefeller Center, New York, New York 10020, by first class mail, on or before _sept 5_____, 2007 be deemed good and sufficient service thereof.

So ordered,

SO ORDERED

J.S.C.

ROLANDO T. ACOSTA
J.S.C.