1.- Que, existió la relación laboral entre Oscar David Cortez Uzeda y el Fondo de

Desarrollo Financiero para la Cuenca del Plata – FONPLATA desde el 15/07/1.995

hasta el 15 de julio del año 2000, designado por el Directorio Ejecutivo de

FONPLATA mediante Resolución Nº 614/95 y carta contrato ADM/CON-007/95 de

fs. 2 a 3 como FUNCIONARIO INTERNACIONAL en el cargo de Jefe de Tesorería

en el que se le comunicó su contratación por el término de 1 año de conformidad

a disposiciones de Política de Personal de FONPLATA, con especificación de las

funciones que cumplirá, lugar de trabajo su remuneración mensual y la

Asistencia Social con la que se beneficiaba como ser: seguro médico, de

accidentes, subsidio familiar, fondo de ahorro, gastos de instalación y retorno y

otras prestaciones de acuerdo con lo previsto en la Política de Personal.-

2.- Que, cumplido el periodo de prueba su contrato es PRORROGADO POR DOS

AÑOS, según cite ADM/CON-007/95 del 18 de abril del año 1997 con las mismas

condiciones del primer contrato con la variante de que vencido el término de dos

años el contrato podrá ser prorrogado de común acuerdo POR DOS PERIODOS

CONSECUTIVOS DE dos años (fs.4).

3.- El contrato de trabajo es prorrogado nuevamente por DOS AÑOS hasta julio

del 2000 mediante cite ADM/CON-008/98 con las mismas condiciones que el

anterior, mejora salarial y variando el inciso f) y g) (fs. 6 a 7), agregándose que

de entrar en vigencia un nuevo régimen de personal el contrato quedará

rescindido, debiendo firmar un nuevo contrato por el tiempo que le falte para

cumplir 7 años que es el plazo máximo de contratación y si cesaran las

actividades de FONPLATA el plazo contractual caducará de pleno derecho.

4.- Que el contrato no fue prorrogado por el último periodo de dos años según cite

SE-250/2000 del 14 de julio del 2000, llegando a cumplir con un tiempo de servicios de

CINCO AÑOS.



Manuel Cortez Moscoso
SECRETARIO - ABOGADO
JUZGADO 2do. DE TRABAJO Y S.S.
SANTA CRUZ - BOLIVIA

5.- La modalidad del contrato de trabajo era CONTRATO A PLAZO FIJO cuyo límite total de permanencia ascendía al término de 07 años, según la Política de Personal del FONPLATA cuya fotocopia cursa a fs. 1, donde se establecen las condiciones, PLAZOS DE LOS CONTRATOS Y PERIODO DE PRUEBA de la siguiente manera: **"a) El periodo de prueba será de un año. b) Cumplido el periodo de prueba se celebrará en su caso el contrato por un término de dos años. c) Vencido el término de dos años, el contrato podrá ser prorrogado de común acuerdo entre FONPLATA y el funcionario por dos periodos de dos años cada uno.**

6.- Que el demandante agotó las instancias administrativas ante el organismo para el cual prestaba servicios persiguiendo la reversión de la medida, llegando incluso al Recurso Constitucional de Amparo para agotar dicha vía sin resultado favorable.

7.- En cuanto al Derecho a Prorroga Funcionaria se puede establecer en la Política de Personal señalada en el punto anterior y en las cartas contrato firmadas por las partes, principalmente en la carta contrato cursante a fs. 4 se establece que vencido el término de dos años, el contrato podrá ser prorrogado, de común acuerdo entre FONPLATA y el funcionario, por DOS PERIORODOS CONSECUTIVOS de dos años; prórroga que se dio por el primer periodo      (fs 6 a 7), no así por el segundo periodo que es el motivo de la litis:

8.- Que, el Art. 14 (fs. 135) del Convenio Sede sobre Inmunidades, Privilegios y Exenciones firmado entre el Gobierno de Bolivia y FONPLATA,   ratificado mediante Decreto Supremo Nº 15.134, del 24 de Noviembre de 1.977, saliente a fs. (184 y 185) dispone que **"El régimen laboral y de beneficios sociales aplicable al personal del Fondo, podrá ser establecido por el Fondo en el sentido de que sus disposiciones no serán menos ventajosas que las vigentes en Bolivia......"** Pudiendo ampararse en todo caso en las leyes sociales y laborales de Bolivia, concluimos en consecuencia que ningún miembro del personal de FONPLATA, cualquiera fuera su

categoría o nivel, podrá estar sometido a un régimen laboral y de beneficios sociales menos ventajosos que el resultante en la República de Bolivia".

9.- Que el contrato de trabajo conforme a lo previsto por el art. 6 de la Ley General del Trabajo CONSTITUYE LA LEY DE LAS PARTES siempre que haya sido legalmente constituido, siendo que el origen que dio inicio a la relación laboral  LA CARTA CONTRATO en la que se someten a la política de personal establecida por FONPLATA y al no ser esta desventajosa para el funcionario corresponde su aplicación según dispuesto por el art. 3 inc. g), j) y Art. 9 del Código Procesal del Trabajo, Art. 24 , 116-III-VI, 161, 162 de la Constitución Política del Estado por lo que al no haber sido desvirtuado por la parte empleadora conforme lo dispone el art. 66 y 150 del Código Procesal del Trabajo y confirmado por el finiquito sujeto a revisión  cursante a fs. 224 elaborado por la parte patronal al haberse interrumpido el cumplimiento del contrato por causa imputable a la patronal le corresponde los beneficios establecidos en la Política de Personal de FONPLATA descritos en la carta contrato de fs. 2 a 3 así como en las Prorrogas de Cartas Contratos de fs. 4 a 5, y de 6 a 7.

**POR TANTO:** La señorita Juez Segundo del Trabajo y Seguridad Social, sin entrar en otras consideraciones de orden legal, administrando justicia a nombre de la Nación y en virtud de la jurisdicción y competencia que por Ley ejerzo, con los fundamentos expuestos en las conclusiones que anteceden de acuerdo con el Dictamen Fiscal de Fondo cursante en obrados de fs. 294 a 295, **FALLO:** Declarando **PROBADA** la demanda interpuesta por Oscar David Cortez Uzeda cursante de fs. 122 a 125 **con costas**,  por haberse probado la relación laboral entre las partes, el tiempo de servicios de 5 años, el contrato a plazo fijo bajo la modalidad de la política de Personal de FONPLATA por ser de aplicación al constituirse en ley de partes y ser ventajosa para el funcionario con relación a la

Ley boliviana, por haberse demostrado el derecho a la prórroga del segundo

periodo de dos años consecutivos, en cuyo mérito conforme a lo dispuesto por los

artículos 162 de la C.P.E., el artículo 4 de la Ley General de Trabajo y 202 del

Código Procesal del Trabajo ORDENO al Fondo Financiero para el Desarrollo de la

Cuenca del Plata  FONPLATA representada por el señor Walter Villalba Saldivar,

pague a tercero día a favor de su ex funcionario el monto equivalente a su

Derecho siguiente:

| | |
|---|---|
| SUELDOS DEVENGADOS:= | $us. 140.688,00 |
| DEVOLUCIÓN DE APORTES EN EL FONDO DE AHORRO DEL PERSONA= | $us. 166.685,85 |
| LICENCIA ANUAL NO UTILIZADA= | $us. 23.736,76 |
| SUBSIDIO DE EDUCACIÓN= | $us. 12.250,00 |
| SEGURO MEDICO | $us.   9.000,00 |
| GASTOS DE RETORNO | $us.   2.000,00 |
| INDEMNIZACIÓN= | $us. 41.034,00 |
| TOTAL | $us. 395.394,61 |
| Menos pago de préstamos a Fondo de Ahorro = | $us. 55.371.01 |
| Recibido a cuenta | $us. 59.408,98 |
| GRAN TOTAL | $us. 280.614,62 |

Son  DOSCIENTOS  OCHENTA  MIL  SEISCIENTOS  CATORCE  62/100

DÓLARES AMERICANOS.

Esta Sentencia que se registrara, donde corresponde, la pronuncio, sello y firmo,

en esta ciudad de Santa Cruz de la Sierra a los dieciséis días del mes de agosto

del año Dos Mil Tres.

REGISTRESE Y ARCHIVESE.

Dra. Nelly R. Sánchez Justiniano
J U E Z
JUZGADO 2° DE PARTIDO DEL
TRABAJO Y SEGURIDAD SOCIAL
SANTA CRUZ - BOLIVIA

Manuel Cortéz Moscoso
SECRETARIO - ABOGADO
JUZGADO 2do. DE TRABAJO y S.S.
SANTA CRUZ - BOLIVIA



*Manuel Cortez Moscoso*
SECRETARIO - ABOGADO
JUZGADO 2do. DE TRABAJO Y S.S.
SANTA CRUZ - BOLIVIA

,a 24 de Mayo del 2.006.-

**VISTOS:** El memorial que antecede presentado por RODOLFO MELGAREJO DEL CASTILLO en calidad de Apoderado legal de OSCAR DAVID CORTEZ UZEDA, en el cual solicita regulación de honorarios profesionales, dentro del proceso laboral por pago de beneficios Sociales seguido contra EL FONPLATA, y..

**CONSIDERANDO:** Que, en el presente estado de la causa, se concluyo con la Sentencia Ejecutoriada en la que se ordena el pago de los Beneficios Sociales al ex trabajador demandante en la suma de $us. 280.614.62.-, monto sobre el cual se dispone el pago del 10% en calidad de Honorarios profesionales por efecto de la cuantía, mas el 25% por la actuación en calidad de apoderado legal más Bs. 2.000.- por la causa social, fijado por el Arancel del Colegio de Abogados vigente.

**POR TANTO:** La Suscrita Juez en uso de sus facultades conferidas por ley en aplicación a lo dispuesto por el Arancel Mínimo del Colegio de Abogados y sin entrar en otras consideraciones Resuelve: **REGULAR LOS HONORARIOS PROFESIONALES** de acuerdo al siguiente detalle.

| | |
|---|---|
| 10 % del Monto Sentenciado $us.280.614.62. | $us. 28.061.46.- |
| 25% como apoderado de $us. 28.061.46.- | $us. 7.015.36.- |
| **TOTAL** | **$us. 35.076.82.-** |

Mas el Arancel Mínimo del Colegio de Abogados   Bs. 2.000.00.-

SON: **(TREINTA Y CINCO MIL SETENTA Y SEIS CON 82/100 DE DOLARES AMERICANOS)**, mas **(DOS MIL 00/100 BOLIVIANOS)**, con lo que se conmina a la institución demandada para que de cumplimiento con el pago de dicho monto y sea en el termino de tres días a partir de su legal notificacion, bajo prevenciones de ley en caso de incumplimiento.

**REGÍSTRESE Y NOTIFÍQUESE.-**

auto #162/06

Tisty Kristian Ron.
AUXILIAR
JUZGADO 2do. DE TRABAJO Y S
SANTA CRUZ - BOLIVIA

Dra. Nelly R. Sánchez Justiniano
JUEZ
JUZGADO 2° DE PARTIDO DEL
TRABAJO Y SEGURIDAD SOCIAL
SANTA CRUZ - BOLIVIA

*Manuel Cortez Moscoso*
SECRETARIO - ABOGADO
JUZGADO 2do. DE TRABAJO Y S.S.
SANTA CRUZ - BOLIVIA

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------x

OSCAR DAVID CORTEZ UZEDA,                          :

                                                   :

                          Plaintiff,               :        Index No.  07/119074

                                                   :

              -against-                             :

                                                   :

FONDO FINANCIERO PARA EL DESARROLLO                :
DE LA CUENCA DEL PLATA
A/K/A FONPLATA,                                     :

                                                   :

                          Defendant.               :
------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF OSCAR DAVID CORTEZ UZEDA'S EX PARTE MOTION REQUESTING AN ORDER OF ATTACHMENT WITHOUT NOTICE

Plaintiff Oscar David Cortez Uzeda ("Dr. Cortez") submits this memorandum of law in support of plaintiff's *ex parte* motion pursuant to CPLR 6201 and CPLR 6211(a), requesting an order of attachment without notice of assets belonging to defendant Fondo Financiero Para el Desarrollo de la Cuneca del Plata, a/k/a FONPLATA ("FONPLATA"), which, upon information and belief, are located in bank accounts within the State of New York at:  (1) Banco do Brasil, 600 Fifth Avenue 3rd Floor – Rockefeller Center, New York, New York 10020; (2) Lloyd's America Inc., The Museum Office Building, 25 West 53rd Street 14th Floor, New York, New York 10019; (3) Dresdner Bank AG, 1301 Avenue of the Americas, New York, New York 10019; (4) UBS AG, 1285 Avenue of the Americas, New York, New York 10019; (5) Citigroup d/b/a Citibank, N.A., 399 Park Avenue, New York, New York 10043; (6) Banco Santander Central Hispano S.A., 45 E. 53rd Street, New York, NY 10022 (collectively, the "Garnishees"). Such attached assets shall be applied toward the enforcement of a foreign country money

judgment against defendant FONPLATA in the amount of $315,691.44, attorneys' fees, and all applicable sheriff's fees. No prior application has been made for the relief requested herein.

## BASIS FOR AN ORDER OF ATTACHMENT WITHOUT NOTICE

Plaintiff is proceeding by an *ex parte* motion rather than by notice of motion because it is urgent for plaintiff to obtain security for an award enforceable against defendant pursuant to Article 53 of the CPLR. Defendant has no place of business within the State of New York but engages in isolated transactions within the State by depositing and maintaining, upon information and belief, millions of dollars in assets in bank accounts in New York City. Defendant's sole assets within the State appear to be the assets in said accounts. *See* Affidavit of Oscar David Cortez Uzeda, sworn to July 17, 2007 ("Cortez Aff.") ¶ 13. Without an *ex parte* order of attachment, defendant will likely dispose of its assets held by the Garnishees in order to evade the enforcement of any award rendered against defendant in New York or otherwise subject such assets to a lien, with or without the State, taking priority over plaintiff's claim to such property. *See id.* ¶ 16.

## · FACTS

Defendant FONPLATA is a development fund created by the governments of Argentina, Bolivia, Brazil, Paraguay and Uruguay for the purpose of promoting development of the Plata Basin. Defendant FONPLATA grants loans, bonds, and guarantees to private entities at the request of the member countries in order to finance development projects in the Plata Basin. Cortez Aff. ¶ 4.

At all times relevant to this action, FONPLATA maintained its administrative headquarters in Bolivia and according to the convention that created FONPLATA, defendant's administrative employees may avail themselves of all existing labor and social laws in the Republic of Bolivia. *Id.* ¶ 5.

In July 1995, Dr. Cortez and defendant FONPLATA entered into an employment contract pursuant to which FONPLATA hired Dr. Cortez to as its treasurer at FONPLATA's administrative headquarters in Bolivia. According to the terms of the July 1995 contract, Dr. Cortez was to serve as treasurer – an administrative position – through July 2002. *Id.* ¶ 6.

Between July 1995 and July 2000, plaintiff received positive evaluations from defendant FONPLATA. For instance, in a April 27, 2000 memorandum, Vicente de Paulo Pereira de Carvalho, FONPLATA's President of Finance and Administration, complimented plaintiff's experience, diligence, ability to work well under pressure, initiative, discipline and results. *Id.* ¶ 7.

The above notwithstanding, in July 2000, defendant fired Dr. Cortez without cause and in breach of the July 1995 contract entered into between the parties. *Id.* ¶ 8.

In response, on October 29, 2002, Dr. Cortez brought an action for damages arising from said termination in the Second Trial Court on Labor Matters and Social Security in Santa Cruz de la Sierra, Bolivia (the "Trial Court"). *Id.* ¶ 9. Despite having been notified of such proceeding, FONPLATA did not appear in its own defense and on March 15, 2003, the Trial Court found FONPLATA in contempt. *Id.* ¶ 10.

On August 16, 2003, the Trial Court found that plaintiff had proved his *prima facie* case against defendant and that defendant had been duly notified of the proceeding. Accordingly, the Trial Court entered a default judgment against FONPLATA and awarded Dr. Cortez damages and attorney's fees, which, as of May 24, 2006 was calculated to be $315,691.44. The court also ordered defendant FONPLATA to pay a Bs. 2,000 (the equivalent of $253.63 as of July 2, 2007) fee to the Bolivian College of Attorneys Bar Association. *Id.* ¶ 11.

Defendant FONPLATA has not made any payments in satisfaction of the judgment against it. *Id.* ¶ 12.

## LEGAL ARGUMENT

I.  **THE COURT SHOULD GRANT PLAINTIFF AN ORDER OF ATTACHMENT, PURSUANT TO CPLR 6201, *et seq.***

A.  **Applicable Standard for Granting an Order for Attachment Without Notice**

"An order of attachment may be granted without notice, before or after service of summons and at any time prior to judgment." CPLR § 6211(a). "[T]he plaintiff shall show, by affidavit and such other written evidence as may be submitted, that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." CPLR 6212(a).

B.  **Plaintiff Has a Cause of Action and Success on the Merits is Probable**

Plaintiff Dr. Cortez has a cause of action based on an enforceable foreign country judgment upon which he will be bringing a motion for summary judgment in lieu of a complaint pursuant to Article 53 of the CPLR. *See* Cortez Aff. ¶ 3. It is probable that plaintiff's cause of action will succeed on the merits.

On August 16, 2003, plaintiff was awarded a judgment against defendant in the amount of $315,691.44 based on a claim of breach of contract that plaintiff brought before the Trial Court in Bolivia. *See* Affidavit of Rodolfo Melgarejo del Castillo in Support of Motion for Summary Judgment in lieu of Complaint, sworn to July 17, 2007 ("Melgarejo Aff.") (attached to Cortez Aff.) Ex. C (*Remisión de Exhorto* or "Summons and Complaint") and Ex. E (a certified copy of the judgment against defendant FONPLATA). The Trial Court had both subject and personal jurisdiction over the parties in that matter and defendant received proper notice of the

proceedings against it. Nonetheless, defendant chose not to contest the proceeding, compelling

the Trial Court to enter a default judgment against defendant. Such default judgment, which to

date has remained unsatisfied, is final, conclusive and enforceable in Bolivia. *See id.* ¶¶ 2, 12.

Moreover, no appeal is pending, and defendant is no longer entitled to appeal such judgment.

*See id.* ¶ 2. Consequently, success on the merits of plaintiff's cause of action is probable given

that the Trial Court's judgment satisfies the statutory requirements of Article 53 of the CPLR.

*See* CPLR § 5304 (requiring that the foreign court have personal jurisdiction over the defendant,

subject matter jurisdiction, and that the defendant have received notice of proceedings carried out

therein); CPLR § 5302 (requiring that a foreign judgment be "final, conclusive and enforceable

where rendered"). CPLR § 5303 plainly states that as long as a foreign judgment satisfies the

requirements of CPLR §§ 5302 and 5304, "[s]uch a foreign judgment is enforceable by an action

on the judgment [or] a motion for summary judgment in lieu of complaint." CPLR § 5303.

    Additionally, success on the merits is very probable here. The Court of Appeals has

explained:

> New York has traditionally been a generous forum in which to enforce
> judgments for money damages rendered by foreign courts. Historically, New
> York Courts have accorded recognition to the judgments rendered in a foreign
> country under the doctrine of comity absent some showing of fraud in the
> procurement of the foreign country judgment or that recognition of the
> judgment would do violence to some strong public policy of this State. The
> public policy inquiry rarely results in refusal to enforce a judgment unless it is
> inherently vicious, wicked or immoral, and shocking to the prevailing moral
> sense.

*Sung Hwan Co., Ltd. v. Rite Aid Corp.*, 7 N.Y.3d 78, 82 (2006) (quotation marks and citations

omitted). Indeed, Article 53 of the CPLR was enacted precisely "to promote the efficient

enforcement of New York judgments abroad by assuring foreign jurisdictions that their

judgments would receive streamlined enforcement here." *Sung Hwan Co.*, 7 N.Y.3d at 82

(internal citations omitted). In rendering the default judgment against defendant, the Trial

Court's proceedings were conducted under a system that provides impartial tribunals and procedures compatible with due process. *See* Melgarejo Aff. ¶ 13. In fact, New York courts have often enforced foreign default judgments pursuant to Article 53 of the CPLR. *See, e.g., Sung Hwan Co.*, 7 N.Y.3d 78 (enforcing a Korean default judgment); *Citadel Mgmt., Inc. v. Hertzog*, 182 Misc. 2d 902 (Sup. Ct. Queens Co. 1999) (enforcing an English judgment and allowing attachment pursuant to motion for summary judgment in lieu of complaint).

Thus, not only do plaintiff's averments and evidence, attached hereto, prove that a *prima facie* cause of action exists, such averments and evidence also more than meet the burden of proof laid out by CPLR 6212 by providing "evidentiary detail, stronger [than] summary and conclusory allegations" in order to show that "it is probable [that plaintiff] will succeed on the merits" in enforcing the Trial Court's judgment against defendant in New York. *Perrotta v. Giannoccaro*, 141 Misc. 2d 155, 157 (Sup. Ct. Monroe Co. 1988).

### C.   More than one ground exists pursuant to CPLR 6201 for attachment

In addition to having a cause of action that exists and is likely to succeed on the merits, a plaintiff must have grounds for attachment pursuant to CPLR 6201 for an order of attachment to be granted. CPLR 6212. In the present case, plaintiff has at least two grounds for attachment pursuant to CPLR § 6201.

CPLR § 6201 provides in relevant part that:

> An order for attachment may be granted in any action, except a matrimonial action, where the plaintiff has demanded and would be entitled ... to a money judgment against one or more of the defendants, when:

> 1. the defendant is ... a foreign corporation not qualified to do business in the state; or

> ...

> 5. the cause of action is based ... on a judgment which qualifies for recognition under the provisions of article 53.

CPLR § 6201.

As shown above, plaintiff Dr. Cortez is entitled to an enforceable foreign money judgment pursuant to Article 53 of the CPLR against defendant for $315,691.44, arising from plaintiff's civil suit in Bolivia.  Consequently, plaintiff Dr. Cortez has grounds for attachment pursuant to CPLR 6201(5).

Based on the fact that (a) plaintiff Dr. Cortez would be entitled to a money judgment against defendant FONPLATA in New York pursuant to Article 53, and (b) defendant FONPLATA is a foreign corporation not qualified to do business in New York, *see* Cortez Aff. ¶ 12, plaintiff also has grounds for attachment pursuant to CPLR 6201(1).  *See Considar, Inc. v. Redi Corp. Establishment*, 238 A.D.2d 111 (1st Dep't 1997).

**D.    The amount demanded exceeds all known counterclaims**

Lastly, an order for an attachment in the amount of $315,691.44, attorneys' fees and all applicable sheriff's fee the amount demanded by plaintiff exceeds all counterclaims by defendant known to plaintiff.  *See* Cortez Aff. ¶ 3.

## CONCLUSION

For all the foregoing reasons, an order of attachment without notice pursuant to CPLR

6201 and CPLR 6211(a) should be granted to plaintiff in the amount of $315,691.44, plus

attorney's fees and all applicable sheriff's fees.

Dated: New York, New York
      August 9, 2007

                              FOX HORAN & CAMERINI LLP

                              By:_____
                                    V. David Rivkin, Esq
                              825 Third Avenue
                              New York, New York  10022
                              (212) 480-4800
                              *Attorneys for Plaintiff Dr. Oscar David Cortez*
                              *Uzeda*